## Frank Carlson, et al., v. The People of the State of Illinois, ex rel. John A. Charlson.

### Gen. No. 4,460.

1. DEMURRER—*when not carried back.* A demurrer to a replication will not be carried back to the plea where a demurrer to such plea· has already been overruled.

2. QUO WARRANTO—*when does not lie.* Where directions are given by statute for ascertaining and declaring the result of an election they must be complied with before the candidate receiving the highest number of votes is entitled to the office, and until those steps are taken such candidate cannot obtain the office or oust the incumbent by *quo warranto;* but if the proper officers wrongfully fail to discharge their duty the remedy is by *mandamus* to compel them to canvas the returns and declare the result.

3. PUBLIC OFFICE—*what essential to right to obtain, by* quo warranto. It is essential for one seeking through the medium of *quo warranto* to obtain possession of a public office to show that he has complied with the law and filed the oath.required by statute.

*Quo warranto* proceeding. Appeal from the Circuit Court of Henry County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed March 8, 1905.

N. F. ANDERSON and John V. STREED, for appellants.

C. E. STURTZ and FRED H. HAND, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On June 17, 1904, the state's attorney of Henry county, on the relation of John A. Charlson, presented a petition to the court below for a writ of *quo warranto* against Frank Carlson, Charles Holtman and Oliver Anderson, to require them to show by what warrant they and each of them claimed to hold and execute the office of trustee of the village of Andover in said county, which office said petition averred they had usurped. The court ordered that summons issue, and it was issued and served, and the respondents filed a plea, to which the relator demurred and the demurrer was confessed. Respondents then by leave of court amended said plea, and the demurrer filed to the original

plea was ordered to be considered as filed to the amended plea, and said demurrer was heard and overruled. Relator then filed its replication to respondents' amended plea. Respondents filed a general and special demurrer to said replication, and that demurrer was heard and overruled. Respondents elected to stand by their demurrer to the replication, and judgment of ouster was entered against them. From that judgment respondents prosecute this appeal.

It is not seriously contended that the replication was good, but it is urged that the plea was bad and did not show that respondents were entitled to hold the office of trustees of said village, and that therefore the court, if it ought to have sustained the demurrer to the replication, should have carried it back and sustained it to the plea, in which case judgment of ouster would have followed. But the record recites that the demurrer to the original plea was ordered to stand to the amended plea and was overruled. The court will not carry a demurrer to a replication back to the plea when a demurrer to such plea has already been overruled. The rule is that the party pleading over in such case waives his demurrer to the plea and admits the sufficiency of the plea. American Express Co. v. Pinckney, 29 Ill. 392; Stearns v. Cope, 109 Ill. 340; Fish v. Farwell, 160 Ill. 236; City of Chicago v. The People, 210 Ill. 84. As the demurrer to the amended plea was waived and the legal sufficiency of the amended plea was admitted by pleading over, and as the replication is clearly insufficient, the judgment of ouster cannot be sustained. But in view of the arguments here for and against the sufficiency of the plea, we deem it proper to consider the pleadings further.

The amended plea set up with full detail that the village of Andover is a municipal corporation organized under the laws of the state of Illinois; that respondents on and prior to April 15, 1902, possessed the legal qualifications fitting them to hold the office of trustee of said village; that on said date a legal election was held in said village for the election of three trustees of the village, and that

they were each duly elected to that office on that date: that the president and board of trustees of the village on April 21, 1902, canvassed the votes cast at said election and declared respondents elected to said office, and that respondents then took and subscribed an official oath as required by law and filed the same in the office of the village clerk, and thereby and by virtue of the statute in such case provided became entitled to hold the office of village trustee of said village for two years and until their successors were elected and qualified; that on April 19, 1904, at the annual election of village trustees of said village, Howard Pillsbury, Gust Wongstrom and August Wenstrom each received the majority of the votes cast at said election for village trustees of said village; that at no time since said election on April 19, 1904, have the votes cast for said Pillsbury, Wongstrom and Wenstrom been canvassed by the board of trustees of said village, nor had the board of said village declared said Pillsbury, Wongstrom and Wenstrom elected to the office of village trustees, nor did said board of trustees of said village cause a statement of the result of the election to be entered upon its journal, nor have said Pillsbury, Wongstrom and Wenstrom, or either of them, filed in the office of the village clerk of said village the oath of office of village trustee of said village, nor has either of them entered upon the discharge of the duties of village trustee; and the plea concluded that by the warrant aforesaid respondents held the office of village trustee of said village of Andover, as well they might, and it denied that they have usurped or do now usurp the office of village trustee of the village of Andover as by said information supposed The replication said that the people ought not by reason of anything in that plea alleged to be barred from maintaining said action, because each of said trustees, Pillsbury, Wongstrom and Wenstrom, after being elected trustees of said village of Andover, appeared at the first regular meeting of the board of trustees after said election and made known their intention to accept the office, and offered to file the oath of office required by the constitution and the statute

and the ordinance of the village, in open meeting of said board of trustees then being held, and ever since that time have attended every regular meeting of said board and insisted upon their right to act.

This replication, it will be seen, assumes that Pillsbury, Wongstrom and Wenstrom had been elected trustees of the village, whereas the plea only averred in that respect that they had each received a majority of the votes cast at said election for village trustee. It did not deny or confess and avoid the allegations of the plea that the votes cast for Pillsbury, Wongstrom and Wenstrom had not been canvassed by the board of trustees, and that the board had not declared Pillsbury, Wongstrom and Wenstrom elected, and that the board did not cause a statement of the result of the election to be entered upon its journal, and that Pillsbury, Wongstrom and Wenstrom had not filed in the office of the village clerk the oath of office required by law, and that they had not entered upon the discharge of their duties as village trustees. All of these averments of the plea were admitted by the silence of the replication. Section 10 of article 4, of chapter 24, of the Revised Statutes, being the general act for the incorporation of cities and villages, provides that the manner of conducting and voting at elections held under that act and the canvassing of the votes shall be the same as nearly as may be as in the case of the election of county officers under the general laws of the state, and that after the closing of the polls the ballots shall be counted and the returns made out and returned under seal to the city or village clerk within two days after the election; "and thereupon the city council or board of trustees, as the case may be, shall examine and canvass the same and declare the result of the election, and cause a statement thereof to be entered upon its journals." Section 11 of said article 4 provides that the person having the highest number of votes for any office shall be declared elected. Section 12 requires the village or city clerk within five days after the result of the election is declared to notify all persons elected of their election, and that unless such persons

qualify within ten days after such notice the office shall become vacant. Section 4 of article 6 of said act requires all officers of any city or village before entering upon the duties of their respective offices to take and subscribe an official oath or affirmation there prescribed, and that such oath or affirmation so subscribed shall be filed in the office of the clerk. Section 3 of article 3 of said act provides that aldermen shall hold their office for the term of two years and until their successors are elected and qualified, and article 11 of said act makes that provision applicable to trustees of villages.

It is a general rule of law that where such directions are given for ascertaining and declaring the result of an election, they must be complied with before the candidate receiving the highest number of votes is entitled to the office, and that until those steps are taken such candidate cannot obtain the office or oust the incumbent by *quo warranto*, but that if the proper officers wrongfully fail to discharge their duty the remedy is by mandamus to compel them to canvass the returns and declare the result. In 10 Am. & Eng. Ency. of Law (2nd Ed.), 745, the rule is stated to be that where the law requires the election officers to make returns of the election to another officer or board, and requires the latter to canvass the returns and determine the result from the returns and declare the same, a candidate who has received the highest number of votes for an office has no power to assume the duties thereof until this is done. In People ex rel. v. North, 72 N. Y. 124, where a statute required the inspectors of a city election in each ward to canvass the votes and immediately deliver a statement and certificate thereof to the city clerk, and required the clerk to deliver such statement and certificates to the council at its next meeting, and required the council to declare and determine from such statements and certificates what persons had been elected to the respective offices voted for at said election, and that those having the greatest number of votes should be declared duly elected, and the council should make and subscribe certificates thereof, to be filed

and recorded, it was held that till the council had performed these acts and officially declared a candidate duly elected, his election was not complete and he was not qualfied to serve.   In State ex rel. v. Lewis, 10 Ohio St. 129, where a candidate for sheriff had been elected and had tendered to the county commissioners such an official bond as they ought to have received but which they wrongfully refused to accept, it was held he was not authorized to enter upon the duties of the office and oust the prior incumbent till his official bond had been actually accepted and approved by the county commissioners, and that he was not entitled to proceed by *quo warranto* against the former incumbent, for the latter rightfully retained the office until his successor had been in all respects qualified to assume its duties, but that the successful candidate should have applied for a mandamus to compel the county commissioners to accept and approve his bond.   That mandamus is a proper remedy in such case is laid down in High on Extraordinary Legal Remedies, sections 55, 56, 60 and 61.   It follows that in our judgment the plea is a complete answer to the petition for a writ of *quo warranto.*

It is, however, argued that the plea is defective in this, that it avers that the *votes* had not been canvassed by the board of trustees, whereas such board had no right to canvass the votes, but only to canvass the returns, and that this, therefore, is an admission that the returns had been duly canvassed.   If this refinement were adjudged well taken, still that does not dispose of the allegations in the plea that the board had not declared Pillsbury, Wongstrom and Wenstrom elected, nor caused a statement of the result to be entered upon their journal, and that said Pillsbury, Wongstrom and Wenstrom had not filed the official oath in the office of the clerk.   But we think this position is not sound.   It is true that the board has no power to count the ballots, and that it is the returns made by the election officers which they are to canvass.   Yet the very section 10 of article 4 of chapter 24 of the Revised Statutes, upon which relator bases this

contention, uses the expression "canvassing the votes" in the earlier part of the section, where canvassing the returns of the votes is obviously meant. So, too, in section 78 of chapter 46 of the Revised Statutes relating to elections, it is enacted that the secretary of state and certain other officers shall "canvass the votes" for certain offices there designated, when it is not meant that they shall handle the ballots, but that they shall from the returns ascertain the number of votes. Section 71 of the same chapter, requires the county clerks and justices of the peace to open the returns and make abstracts of the votes. This plea does not mean that the board of trustees had not canvassed the ballots, but that the board had not ascertained the result by the canvass of the votes shown by the returns. As the plea uses the language of the statute, we think it sufficient in this respect.

But it is said that respondents are setting up their own failure to perform their duty as a justification for their retention of the office of trustee. The record does not disclose that they failed to perform their duty, if such failure would be any reply to the plea. Under the city and village act as amended in 1887 by the act providing for the election of a president, separate from the six trustees, the village board consists of seven members, the president and six trustees, and these three respondents did not constitute a majority and could do no act without the concurrence of the others; and there is nothing in the record to show that they are responsible for the failure to canvass the returns and declare the result.

If it be held that the requirement that the official oath shall be filed in the office of the village clerk is directory merely, yet it certainly is material to the maintenance of this suit that before the suit was begun, Pillsbury, Wongstrom and Wenstrom did take and subscribe the official oath prescribed by law; and the replication does not allege that they complied with that requirement of the statute, but only that they offered in an open meeting of the board to file an oath of office; and for all that appears even that may have been done before the board had even an op-

portunity to canvass the returns.    The record contains no explanation of the situation.    The affidavit by relator attached to the petition, and upon which the court acted in ordering a summons, stated under oath that the board had duly canvassed the returns and had duly ascertained and declared that Pillsbury, Wongstrom and Wenstrom were elected trustees of said village and that at the next lawful meeting of the board, held shortly thereafter, Pillsbury, Wongstrom and Wenstrom each duly took the oath of office and qualified as the law required; but by this replication it is admitted that none of these things had been done.    If the plea and replication state the facts correctly, we are of opinion the relator has mistaken the remedy. The judgment is reversed and the cause remanded with directions to the court below to sustain the demurrer to the replication.

*Reversed and remanded.*