[No. 7449.]

## TANGEMAN V. BOARD OF ALDERMEN OF CITY AND COUNTY OF DENVER.

STATUTES—*Construed*—The Charter of the City of Denver provided that "an elective officer may be removed from office by petition of the electors, and an election thereunder, but no person shall be so removed from office, within six months after his election thereto."

Held that the purpose of the statute was to provide for the recall of an officer after he had served for the specified period, and had thus been placed on trial; that no other purpose could be rationally attributed to this limitation of the time within which a recall might be had; that the phrase "after his election thereto," imports not only the entire procedure for ascertaining the public will, but the induction of the candidate into office; that, therefore, a petition for recall, presented within less than six months after the officer had been admitted to his office—as the result of a contest of his election,—though within more than six months from the day upon which the election was held, was premature—(218, 219).

Cases cited showing the various meanings ascribed by the courts to the word "election," under varying circumstances—(214, 217).

*Error to Denver District Court*—HON. HARRY C. RIDDLE, Judge.

HON. BENJAMIN GRIFFITH, attorney general, Mr. E. W. HURLBUT, Mr. E. P. COSTIGAN, Mr. FRED W. PARKS, Mr. C. F. CLAY, Mr. HALSTED L. RITTER and Mr. BERT MARTIN for plaintiff in error.

Mr. HENRY A. LINDSLEY, Mr. G. Q. RICHMOND, Messrs. BICKSLER & BENNETT for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court:

On March 3, 1911, the plaintiff in error filed his petition for mandamus in which he alleges, in substance, that the respondents (defendant in error here) are the Board of Aldermen of the City and County of Denver; that the petitioner is a qualified elector residing in the ninth ward in said city and brings this action for himself and on behalf of one thousand nine hundred and nine other qualified electors residing in said ward, who, together with himself, had signed a petition to recall Cornelius C. Worrall, the alderman of said ninth ward. Then follows a copy of the petition in which they petition to recall the said Worrall, who had been declared by the Board of Aldermen to be the alderman elected at the city election, May 17, 1910, in the said ninth

ward, etc., and petition that a special election be called and held in said ward, according to the charter for the purpose of electing a member of the Board of Aldermen for said ward. Then follows the alleged grounds upon which it is sought to remove Worrall, which are, in substance, that Worrall was legally defeated by his opponent at the election May 17, 1910; that the election commission so declared and that the recount by the committee of the Board of Aldermen in the contest instituted by Worrall against Chamberlain so found; that not one of the charges made by Worrall in his statement of contest filed with the Board of Aldermen was sustained; that no evidence was introduced in support of any of them; that carelessness on the part of some of the election officials in a few precincts was discovered in counting the ballots; that such mistakes were wholly insufficient to change the majority in favor of Chamberlain; that, knowing all this, Worrall demanded from the Democratic members of the board that they brush aside all law and justice and by force of their majority in the board seat him, and unseat Chamberlain; that his demand was granted and a most grievous wrong inflicted upon not only Chamberlain, but the citizens of the ninth ward, who had decided, by their votes, that Mr. Chamberlain was their choice for alderman; that the signatures of the petitioner and said one thousand nine hundred and nine other qualified electors constituted more than twenty-five per cent. of the vote cast in said ward for all candidates for alderman at said election; that said petition was duly filed with the clerk of the city on the 20th of January, 1911.

The petition contained the further fact, that on May 27, 1910, the election commission declared Chamberlain was elected alderman for said ninth ward; that on June 3, 1910, Worrall filed with the Board of Aldermen a contest against Chamberlain and that the Board of Aldermen did, thereafter, at a regular meeting held on the 20th of December, 1910, decide said con-

test in favor of Worrall, and declared him to have been elected alderman from said Ninth Ward at the election held on the 17th day of May, 1910; that said Worrall is a duly elected, qualified and acting alderman from said ward; that more than six months had expired after his election before said petition was filed, then follows certain sections of the charter of the City and County of Denver, which will hereafter be referred to.

An alternative writ of mandamus was issued, returnable March 6, 1911, at which time the respondents filed their answer, which, eliminating many contentions, presents two questions (which were the principal ones considered by the trial court). In the first, they allege that the election was held on the 17th day of May, 1910; that the election commission, on the 27th of the same month declared Chamberlain elected; that on the 3rd of June following, Worrall filed a contest; that on the 20th of December, following, the council decided the case in favor of Worrall and did then declare Worrall elected as Alderman from said ninth ward, but denied that said board declared Worrall elected at the election held on the 17th of May, 1910; on the contrary allege that the board only determined that Worrall received a plurality of the legal votes cast over and above the votes cast for Chamberlain and sustained the contest of Worrall, and then and there, on the 20th day of December, 1910, declared Worrall elected alderman from the ninth ward and denied that six months had elapsed and expired after the said election of said Worrall, for these reasons they claimed the petition was premature in time.

The second defense pertains to the provisions of Section 22b of the charter providing for the recall, among other things, it states:

"An elective officer is subject to recall as herein provided and may be removed from office by a petition of the electors and an election held thereunder, but no person shall be so removed from office within six

months after his election thereto.   The petition shall name the officer to be removed   *   *   *   and shall contain a statement of the grounds upon which it is sought to remove him."

The respondents allege that the petition does not comply with the provisions of said Section 22b, but that the same is in violation of its provisions; that the said petitioners, by virtue of said petition and the matters therein recited, were not entitled to have the city council call the election, for the reason that the petition does not set forth any act of omission or commission done or performed by the said Worrall during the time he has served as a member of the Board of Aldermen, nor does it contain any statement of the grounds upon which it is sought to remove him, as contemplated by section 22b of the charter; and the respondents denied that Worrall deliberately or in any manner demanded from the democratic members of the board that they should ignore all law or any law, or ignore justice in the determination of the contest between Worrall and Chamberlain, and denied that Worrall demanded that they, the Board of Aldermen or the democratic members thereof, should, by force of their majority in the board,  seat him as alderman from said ninth ward and unseat Chamberlain.   They denied any demands by Worrall other than those legitimately presented by the contest proceedings.

Upon the filing of this answer the petitioners; without offering any evidence, made application to have the alternative writ made peremptory; this application was denied and the alternative writ discharged.    The petitioners bring the case here for review upon error.

In passing upon these two defenses, among other things, the learned trial judge said:

"There is a matter of public policy involved in this proceeding.   It was a matter of common notoriety at the time this recall provision was adopted—I think the

court is justified in taking judicial notice of that—that this matter was presented to the people of this community, and votes were solicited for this recall, upon the theory that it would give the citizens of the city of Denver an opportunity to recall elective officials who were guilty of malfeasance or non-feasance while in office, and I do not think that this section can be stretched in its application to a set of facts so as to include an individual who is not charged with any misconduct or any wrongful act and which resulted in his being given a certificate of election by the Board of Aldermen. It is true the allegation is that he deliberately demanded that they brush aside all law and justice and by force of majority give him a seat; but it is not alleged that he had any part in casting a vote of bringing about that result, except as he might by argument prevail on those who had the power and the authority under the charter to determine that result.

As a matter of public policy, it is essential that there be some restraint thrown around the exercise of such a right as this. I do not mean by that to invade the province of the people of this state or of this city in any way, but it must be looked at from a reasonable standpoint; there must be some justification for a petition of this sort, and if called upon to determine this question upon that ground I think the writ would be denied. However, we prefer not to put it on that ground and shall not do so.

* * * Under the Charter of the City and County of Denver, the aldermen are the sole judges of the qualifications, election and return of their own members; and under this petition it appears that on the · 20th day of December, 1910, at a regular meeting thereof, the Board of Aldermen decided said contest in favor of said Worrall and against the then incumbent of the office—Mr. Chamberlain.

In view of the construction to be given the term "election" as used in this charter, that the person

against whom the petition for recall is directed shall not be so removed from office within six months after his election thereto, this application is prematurely presented and, without going into any other matters, I do not feel justified at this time in requiring the Board of Aldermen to call this election, and the writ will be discharged."

If the position of the trial court in his construction of the word "election" as used in the charter is correct, none of the other questions need be considered. In placing a construction upon the word "election" as used in this section of the charter, it is necessary to take into consideration the sense in which it was being used and what was intended to be accomplished.

The authorities cited clearly demonstrate that the word "election" has many definitions; when applied to elections as the term is generally understood, a construction given it when used in one legislative enactment may not be at all applicable or proper when applied to another, but when used in a different sense, a different meaning is proper and is so applied to the same word; for instance, in the cases cited by the petitioner, that of *State ex rel. Harris v. Tucker*, 54 Ala. 205, involved a contention over the time within which a sheriff's bond should be approved. On the one side it was contended that the fifteen days allowed began to run from the date of the certificate of election given by the Secretary of State; on the other, it was contended that the time began to run from the date on which the election was held. Thus it will be seen that accepting either contention, the object to be accomplished was to have all sheriffs give a bond and have it approved prior to the time of their induction into office, and that court held, when considered in the light in which it was being used, it meant fifteen days after the date the votes were actually cast.

To the same effect is the Collings' case (Pennsylvania) reported in Brightly's Leading Cases on Elec-

tions, 503, where it was provided that a petition for contest of election should be filed within ten days after the election, in which case it was held that the word "election" in the sense in which the expression was used, meant the regular election day, within its popular sense, to-wit, the date upon which it was actually held and the requirements and duties of that day.

In the case of *Seaman v. Baughman,* 47 N. W. (Iowa), 1091, the word "election" as used in Section 6, Art. 2 of the Iowa constitution was construed; it was held that as there used it refers to a choice of persons for public office, but has no application to the meetings of electors of a district township, for the transaction of the general business of the township. This case involved the validity of a tax for the construction of a school house where the vote was not taken by ballot and it was not clear how the vote was taken; it was held that the word "election" as named in the constitution, did not apply at all.

The case of *Ex parte Conley,* 75 S. W. (Texas) 301, involved the legality of the election, which was held invalid upon account of the failure to post one of the five notices for the requisite number of days preceding the election, as required by law. It was held the word "election" as there used meant the act of casting and receiving the ballots from the voters, counting the ballots and making returns thereof, and that as there used it must be so construed, there being nothing in the law to suggest that the legislature intended to use it in a different sense, in contradistinction to acts which are to be done preparatory to election.

On the other hand, in the case of *State v. McCoy,* 43 Atl. (Del.) 270, it was held that the words "an election" under the constitution of Delaware, mean and involve every element necessary to the complete ascertainment of the expression of the popular will, embracing the entire range from the deposit of the ballot by the elector up to the final ascertainment and certificate

of the result; that an election by the people means and includes the perfected ascertainment of such result.

In the case of *State v. Wilroy*, 32 N. C. 329, it was held that the word "election" as used in Revised Statutes, 1833, chapter 24, sec. 6, respecting appointments to fill vacancies in the office of constable, and providing that the person so appointed shall be qualified to act until the next election of constables, should be construed to mean not only the act of choosing, but the act of choosing and inducting into office.

In the case of *Bowler v. Eisenhood*, 12 L. R. A. (S. D.) 705, where the election was held November 4, 1890, on November 22nd, upon account thereof, the Auditor, vened and proceeded to open the returns from the various precincts and make abstract of the votes as provided by law. On November 14th, at an adjourned meeting the canvass disclosed that two candidates had an equal number of votes for the office of Sheriff, and on November 22nd upon account thereof, the Auditor, pursuant to law, proceeded, publicly, to decide by lot which of the persons so having an equal number should be declared elected; it was held that the twenty days allowed for contest did not commence to run until the time it was decided by lot on November 22nd and the defendant declared elected, although it was shown that the canvass had been closed on November the 14th.

In the case of *People ex rel. Conless et al. v. North*, 72 N. Y. 124, the Board of Aldermen made a certain appointment, after the date of the election and upon the date when, but before, the new members qualified, and before their election was duly certified and declared by the old board. It was held it could not be determined that they had been elected before it was duly certified and declared, and that under the provisions of the statute, the election of a ward officer is not complete until it shall have been declared and certified to by the common council; that these declarations and certificates are indispensable for the purpose of consummating the

election and qualifying the candidate to enter upon his office. In which case, the court said:

"  *  *  *  An examination of the whole section shows, we think, that its intention was to provide for the manner in which the election of the candidate should be consummated and officially declared; and that until these acts are done, his election is not complete, and he is not qualified to serve."

This same doctrine is maintained in principle upon cases where it is sought to secure an office by *quo warranto*.

In the case of *Carlson et al. v. The People*, 118 Ill. App. 592, it was stated,

"*  *  *  where such directions are given for ascertaining and declaring the result of an election, they must be complied with before the candidate receiving the highest number of votes is entitled to the office, and that until those steps are taken such candidate cannot obtain the office, or oust the incumbent by *quo warranto*, but that if the proper officers wrongfully fail to discharge their duty the remedy is by mandamus, to compel them to canvass the returns and declare the result."

This summary of the authorities cited fully demonstrated the correctness of the conclusion that the construction and meaning of the word "election" must be gathered from the sense in which it is used, when considered in the light of what was intended to be accomplished as disclosed by the charter.

The contents of section 22b, commonly designated the recall section, are comparatively new in our system of government, and the interpretative branch of the law is in rather an undeveloped state on the subject. So far as we have been able to ascertain there appears to have been no adjudicated cases upon the question under discussion.

When considered in the light of what was sought to be accomplished, it was evidently the purpose of the

framers of this section of the Denver charter to en-
graft therein a provision providing, under certain cir-
cumstances, by a vote of the people, for the recall of
any elective officer of the city, after he had served and
been thus placed upon trial for a certain period of time;
in substance, the charter provides for an answerable or
responsible tenure in all elective offices, and the holder
of such an elective office may be removed, after the ex-
piration of a certain period, by the electors qualified to
vote for his successor.   This seems to be recognized by
the authorities cited by the plaintiff in error, and if it
was not intended to allow him this period of probation
before he was subject to recall, then we are unable to
ascertain what this period of time was placed in the
charter for at all.   The rule is elementay that it is
not to be presumed that language placed in the charter
should have no meaning or effect, for which reason we
think the rational construction, and only one, to be given
that portion of section 22b is that it was intended
that an alderman should not be subject to recall until
he should have served in the performance of his duties
as such for the period of six months, and that as used
in this section the language "but no person shall be so
removed from office within six months after his election
thereto" was intended to mean that the incumbent
should be in office for the period of six months before
he was subject to such removal; that the words "after
his election thereto" were meant to include the entire
procedure of election, including the ascertainment of the
result and his induction into office, and when consid-
ered in the light of what is sought to be accomplished,
we cannot conceive how any other construction can  pos-
sibly be placed thereon.   If this language "within six
months after his election" does not mean that he should
have the right to serve a period of six months and dur-
ing that time demonstrate to his constituency his fitness
for the position, then we are unable to understand and
have not been advised, what it does mean.   If it does

not mean to give him a tenure in office for a definite time certain before he is subject to recall, then why is it there at all and what is its object? If it can be argued that the object was to prohibit any other election within this six months after the general city election; we suggest this could not have been what was intended for the reason that the charter does not so provide, but, on the contrary, it evidently provides for other special elections upon sundry questions during this period. Besides, as a general rule, in such charters, as in this one, the mayor, sometimes the Board of Supervisors or some of them, are elected at different elections than the particular Board of Aldermen, some such officers for a four year term, the Board of Aldermen for a two year term, and we have not been cited to any other provision of the charter which would prohibit an election for the recall of some of these other officers within this same six months period.

So far as we are advised, there is no provision of the charter which limits the number of elective officers to be recalled, or the number of elections to be held for that purpose after this six months has elapsed, and it is not consistent to presume that even an unavailing effort was attempted by this language to guard against repeated elections, or any elections during this six months, after the regular election, and thereafter leave the field open for as many elections, and at as many different times as twenty-five per cent. of the constituency of each elective officer might desire, when they thought they had just cause therefor. We think the authorities cited by the plaintiff in error, and so earnestly relied upon by his counsel in support of other contentions, are in harmony with these views upon this subject.

In the case of *Good v. Common Council*, 90 Pac. (Cal.) 44, it is said:

"  *  *  *  By virtue of this provision every elective officer elected after the adoption of the amendment holds office subject to the condition subsequent

that 25 per cent. of the electorate of the district from which he was elected may by petition express their disapproval of his action upon some measure or as to some policy, and demand that he be sustained by a vote of confidence or retire."

In which case the court also said:

"* * * There is no doubt that the provision here under consideration, and similar ones in other city charters, are intended to check a growing forgetfulness on the part of officeholders of the principle that the duties of their offices are to be discharged in the interest of the public and not their own."

Applying this reasoning to the case at bar and the object sought to be accomplished (evidently good government in all municipal affairs), it was certainly the intentions of the framers of this charter that the successful candidate should have six months trial in the performance of his official duties within which to make good, before any effort was to be entertained looking toward his recall. In the San Diego case upon the question of the reasons for his recall, the court said:

"The reason why the removal is asked in this case and the grounds upon which the petition for recall rests, are that the councilman whom it is sought to remove voted for and supported a certain ordinance regulating the licensing and sale of liquors in the city of San Diego; that he voted to disregard a former petition for his recall; that he repeatedly voted to disregard petitions to refer to the vote of the people ordinances passed by the council of said city, filed in conformity to the provisions of the charter; and that he voted for a false certification of an ordinance to prevent a referendum."

It will be observed they are all upon account of acts committed by the councilmen, while in office. It is alleged that as such official he did many things sufficient to justify his recall, while if the construction of the petitioner here is correct as to the meaning of the word "election" as used in this charter, a system of pro-

cedure is created whereby, under certain conditions, where a councilman was seated by contest proceedings which promulgated a long and continued fight before its ultimate determination, he could be recalled before he ever had an opportunity to take his seat or perform any official duties, or at least the proceedings could be instituted immediately upon the date which he was inducted into office, and without any reference to any act performed by him as such officer.   We do not think it was intended that such a construction should be given to this section as would ever permit such a condition to arise.

The other case relied upon by the plaintiff in error, that of *Hilzinger v. Gillman*, 105 Pac. (Wash.) 471, in speaking upon this subject and the term of an officer thereunder, among other things, the court said:

"   *   *   * His term, while in a measure fixed, was subject to the condition subsequent that 25 per cent. of the electorate of the ward from which he was elected could by petition express their disapproval of his official action upon one or more measures of local policy, and demand that he be sustained by a vote of confidence or retire."

Applying this announcement to the case at bar, or to one rather where the entire six months had elapsed after the date of election (as construed by the petitioner), and before the date of his induction into office under a contest, in such a case he would have performed no official actions *upon one or more measures of local policy*, in fact could have done nothing officially subsequent to the date upon which he was voted for; so that upon the reasons set forth by either of these authorities, the only conclusion that we can deduce therefrom is that the language of the charter means as above indicated, and that the trial court committed no error in so holding.

In arriving at this conclusion, we are not unmindful of the ruling of this court in the case of *Carlile v.*

*Henderson,* 17 Colo. 532, where it was held that the word "election" as used in Art. 5, Sec. 30 of our Constitution meant a date previous to the time the party could have been inducted into office. That section, among other things, provides that 'no law shall increase or diminish the salary of any public officer after his election or appointment.' In which case it was pointed out that in the sense there used any other construction would defeat the objects intended to be accomplished by the section. At page 536, the court, speaking through Mr. JUSTICE ELLIOTT, said:

"We have endeavored to construe section 30 according to the plain, ordinary signification of its words. No reason is perceived for resorting to any other rule since such construction best effectuates the purposes of said section. Nothing in the line of partisan or personal legislation could be more mischievous than that the general assembly should have the power, at the opening of the legislative session, to rush through acts increasing or diminishing the salaries of those just elected to executive offices. The temptation to thus reward favorites, punish opponents, or make bids for executive favors, would be as great before such officers elect had qualified as afterwards. That it was the object of the constitution makers to prevent such evils cannot be doubted."

In harmony with these views we think our construction here best effectuates the purposes of section 22b of the charter, also that nothing in the line of partisan could be more mischievous than to allow twenty-five per cent. of the people of a district, when dissatisfied with the result of an election or a decision involving a contest, for these reasons and without any cause, so far as the official actions of the party declared elected were concerned, to secure a petition calling for his recall, compel him, and possibly his defeated opponent to go through the result of another election, as well as the annoyance, the burden and the expense to the tax-

payers, without any reasonable grounds or just cause therefor, other than the defeat of their candidate, or the decision of the contesting tribunal, and we are confident from his reasons given in the Carlile case, if the distinguished jurist who wrote that opinion was still living and had this section of the charter under consideration that his conclusions concerning it would be in harmony with the views herein expressed.

The sufficiency of the grounds for removal stated in the petition has been discussed by counsel at length; the plaintiff in error claims the people are the sole judges of the sufficiency of the grounds for recall. The defendants in error contend that the reasons stated in the petition are insufficient; as construed by them it fails to state any act of omission or commission of any official duty subsequent to his election. To support this position they cite the case of *Good v. Common Council, supra,* wherein the court said:

"A case of 'removal for just cause' in this sense implies some misconduct upon the part of the officer, or imputes to him some violation of the law. Under such circumstances it is necessary that the charges against him shall be based upon some refusal to obey or intention to violate the law prescribing his duties."

As the trial judge did not base his ruling upon this question and as we have decided he was correct in the reasons given for his decision, it is unnecessary for us to enter upon a discussion of, or make any finding concerning, this question, and our comments upon the quotations set forth from other opinions should be understood to be expressly limited to their bearing and reasoning upon the question being discussed by us, and not as giving any expression of this court's views upon the latter question.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT dissent.