[Civil No. 3462. Filed June 13, 1934.]

[33 Pac. (2d) 591.]

CARROLL HUDSON, Plaintiff, v. JOHN CUMMARD, Defendant.

·Messrs. Struckmeyer & Jennings, for Plaintiff.

Messrs. Cunningham, Carson & Gibbons, for Defendant.

LOCKWOOD, J.—On December 19, 1933, Carroll Hudson, hereinafter called plaintiff, filed with this court an application for leave to prosecute an action in the nature of *quo warranto* against John Cummard, hereinafter called defendant. Leave was granted, and a citation issued to defendant to appear and answer the complaint. Defendant filed a general demurrer to the complaint together with an answer, and later, by stipulation, a statement of facts, and the matter was submitted on briefs.

There are a number of questions raised which allege defects in form rather than substance. We think it unnecessary to pass upon any of these matters, for the case can be, and in our opinion should be, determined upon the issue presented therein which is of greatest importance not only to the parties, but as a precedent for the future. The facts involved necessary to a determination of this issue are taken from the statement of facts and from matters of which this court is obliged to take judicial notice, and may be stated chronologically as follows:

The Eleventh Legislature of the state of Arizona at its regular session had proposed for submission to the qualified electors four constitutional amendments. Thereafter, and at its first special session

it passed chapter 5 of that session, which reads, so far as material, as follows:

"Section 1. A special election is hereby called for the third day of October, 1933, for the purpose of submitting to the qualified electors of the state the following:"

and the chapter thereafter recited the various amendments which had been previously ordered submitted by the legislature.

The Honorable Lewis Douglas, who was regularly elected in November, 1932, as Representative from Arizona to the Congress of the United States, resigned his office, and on June 2, 1933, there being a vacancy in the office of Representative, as aforesaid, the Governor issued a proclamation, which reads as follows:

"A Proclamation

"Executive Department

"State of Arizona

"Whereas, a vacancy exists in the office of Representative to the Congress of the United States in Arizona by reason of the resignation of the Honorable Lewis W. Douglas, Representative from Arizona to the Congress of the United States; and

"Whereas, it is provided by article 1, section 2 of the Constitution of the United States that:

" 'When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such vacancies.' "And

"Whereas, it is provided by section 1157, Revised Code of Arizona, 1928, that:

" 'Special elections to fill a vacancy in the office of a member of the legislature, representative or senator in congress, shall be held only on the proclamation of the governor. When a vacancy occurs in the office of United States senator, it shall be filled at the next general election, for the unexpired term; if the next general election is not to be held within six months, the governor may call a special election to fill such

vacancy by appointment until the election of the successor at such general or special election.'
"And

"Whereas, it is provided by section 10, article 7 of the Constitution of the State of Arizona, that:

" 'The Legislature shall enact a direct primary election law, which provides for the nomination of candidates for all elective, state, county, and city offices, including candidates for United States Senator and for Representative in Congress.'

"Whereas, it is provided in section 1273, Revised Code of Arizona, 1928, that:

" 'On the eighth Tuesday prior to any general or special election at which candidates for public office are to be elected, there shall be a primary election at which each political party entitled and intending to make nominations for the ensuing general or special election shall, if it desires to have the names of its candidates printed on the official ballot at such election, nominate its candidates for all elective, senatorial, congressional, state, judicial, county and precinct offices to be filled at such election;'

"Now, Therefore, I, B. B. Moeur, Governor of the state of Arizona, in pursuance of my duty as prescribed by article 1, section 2 of the Constitution of the United States, and section 1157 of the Revised Code of Arizona, 1928, do hereby proclaim a special primary election in the State of Arizona to be held on Tuesday, the 8th day of August, 1933, for the nomination of candidates for the office of Representative from Arizona to the Congress of the United States to fill the unexpired term of the Honorable Lewis W. Douglas, resigned; and I do hereby proclaim a special general election in the State of Arizona to be held on Tuesday the 3rd day of October, 1933, for the election of a Representative from Arizona to the Congress of the United States to fill the unexpired term of the Honorable Lewis W. Douglas, resigned."

Thereafter, and on June 24, 1933, Amos A. Betts, who had been duly elected to the office of corporation commissioner for the term of six years ending De-

cember 31, 1934, submitted his resignation from such office to the Governor, which was duly accepted, and on July 5, 1933, defendant was by the Governor appointed to fill the vacancy on the Corporation Commission created by the resignation of Betts, and duly qualified for such office as required by law. Thereafter, and on July 19, 1933, plaintiff filed a nomination petition for corporation commissioner with James H. Kerby, Secretary of State, which petition requested that plaintiff's name be placed on the ballot to be used in the primary election referred to in the Governor's proclamation above set forth, as a candidate for the office of corporation commissioner in the Democratic primary. The primary election was held on August 8th, and the name of plaintiff appeared on the Democratic ballot as a candidate for office of corporation commissioner in seven of the counties of the state, the authorities in the other seven counties not placing any name on said primary ballot as a candidate for such office. Plaintiff received more votes in the primary than any other person as a candidate for corporation commissioner, and his name was duly certified by the Secretary of State as the Democratic candidate for that office, at the election to be held on the 3d day of October. At such election his name appeared on the ballot in nine of the counties of the state, the authorities in the other five counties not placing it thereon, and he received a majority of the votes cast for the office of corporation commissioner, and a certificate of election was duly issued to him by the Secretary of State. Thereafter, he filed a bond as such corporation commissioner, and an oath of office, and later notified the Attorney General that he claimed the office of corporation commissioner which was occupied by Cummard, and requested the Attorney General to bring action to determine title to the office. The

latter refusing to accede to the request, this action was brought by plaintiff.

As will be seen by the foregoing recital of facts, there . are a number of questions which might be raised in the case, but we prefer to decide it on the question of whether or not the election of October 3, 1933, upon which plaintiff bases his claim to the office of corporation commissioner, was an election at which the office which he claims could be filled.

Section 1 of article 15 of the Constitution, which refers to the corporation commissioners and the manner of their choice, reads in part as follows:

" . . . In case of vacancy in said office, the Governor shall appoint a commissioner to fill such vacancy. Such appointed commissioner shall fill such vacancy until a commissioner shall be elected at a general election as provided by law, and shall qualify."

When Betts resigned, there was, of course, a vacancy, and defendant was properly appointed and qualified to fill it. By the terms of the Constitution he retained the office until another commissioner was elected "at a general election as provided by law." The question before us then is, what is the meaning of the phrase just quoted? The word "law" in this connection means either the Constitution itself or some statute passed by authority thereof. The only election specifically mentioned in the Constitution is that described in section 11 of article 7 thereof, which reads as follows:

"Section 11. There shall be a general election of Representatives in Congress, and of State, county, and precinct officers on the first Tuesday after the first Monday in November of the first even numbered year after the year in which Arizona is admitted to Statehood and biennially thereafter."

Obviously, the election held on October 3d was not the constitutional general election. The legislature may, however, provide for other elections, both gen-

eral and special, so long as they do not conflict with the constitutional requirements. *Sawyer* v. *Haydon,* 1 Nev. 75; *People* v. *Weller,* 11 Cal. 49, 70 Am. Dec. 754; *State* v. *Jenkins,* 43 Mo. 261. On examining our statutes, we find that the legislature did indeed provide by chapter 5 of the Session Laws of the First Special Session of the Eleventh Legislature, quoted above, for an election to be held on the 3d day of October, 1933. Nowhere in the statutes do we find any other election specifically authorized or directed by law to be held upon that date. We do, however, find a provision that certain elections may be held on the proclamation of the Governor, in section 1157, Revised Code of 1928, which reads in part as follows:

"§ 1157. *Special Elections by Proclamation; Vacancy of U. S. Senator.* Special elections to fill a vacancy in the office of a member of the legislature, representative or senator in congress, shall be held only on the proclamation of the governor. . . . "

And the proclamation of the Governor, hereinbefore set forth, specifically stated it was issued under the authority thus conferred. It will be noted, however, that elections called by virtue of this section are limited to the choice of certain named officers, among which corporation commissioners are not included, that they do not recur at fixed and definite intervals, and that the statute expressly describes them, not as general elections, but as special ones. The legislature in describing these elections as "special" has apparently adopted as a test of the difference between "general" and "special" elections the rule that elections for a definite purpose, and regularly recurring at fixed intervals without any other requirements than the lapse of time, are "general," while all others are "special." This test seems to us just, logical and reasonable and in accord with the ordinary understanding of men. Since the Constitution provides that an appointed member of

the Corporation Commission shall hold until his suc-
cessor is chosen at a "general election provided by
law," it would appear that since the election upon
which plaintiff bases his claim is nowhere in the Con-
stitution or statute described as a general election,
that it is held but once and does not recur, and is
expressly described in both the statutes permitting
it as a special one, that he was not chosen to fill the
office of corporation commissioner in the manner pre-
scribed by the Constitution.

Plaintiff relies strongly upon the case of *Allen* v.
*State,* 14 Ariz. 458, 130 Pac. 1114, 1116, 44 L. R. A.
(N. S.) 468. Therein we stated as follows:

"Section 11, art. 7, of the Constitution, designates
the biennial election to be held on the first Tuesday
after the first Monday in November 'a general elec-
tion,' and it is none the less 'a general election' be-
cause some of the officers therein mentioned are not
voted for. An election for Representative in Con-
gress and presidential electors is a general election
in fact, because it is state-wide, permitting all quali-
fied voters to vote, and because it is so named by both
the organic and statutory law. The phrase 'next
regular general election' occurs but the one time in
the Constitution. 'A general election,' and 'the gen-
eral election last preceding,' and 'the last preceding
general election,' 'first general election thereafter,'
and 'general state election' occur. We are not now
concerned as to whether these varied expressions
describe the same kind of an election, or different
elections. Suffice it to say that the election at which
chapter 82 was submitted was the 'next regular gen-
eral election' held after the referendum petition was
filed against it in the office of the Secretary of State.
'In the case of any particular statute, the construc-
tion can be determined only by considering the con-
text in which the word is found, the purpose of the
statute, and the object which it was designed to
fulfill. The next regular election may mean the next
election at which officers are to be regularly elected,
or it may merely be used to exclude special elections,

or it may be used synonymously or interchangeably with the word "general."' *People* v. *Babcock*, 123 Cal. 307, 55 Pac. 1017.

"When it is considered that it was the evident purpose of the Constitution to give every qualified voter of the state an opportunity to register his approval or disapproval of initiated or referred measures, it becomes apparent that that purpose is fully effected by a reference of such measures to a general state-wide election, and we therefore conclude that 'regular general election,' in this instance, should be construed to mean the same as general election. We thus find that the people, who are the source of all power, in a proper manner, by their votes, at a proper place, at the polls, and at a proper time, a general election, have registered the public will upon chapter 82 and placed thereon the seal of their approval."

Apparently plaintiff claims the phrase therein, "an election for Representative in Congress and presidential electors is a general election in fact, because it is state-wide, permitting all qualified voters to vote," is a statement by us that all state-wide elections are necessarily "general elections." He overlooks the fact that we also stated that the particular election involved in that case was "so named by both the organic and statutory law," and that it recurred regularly at fixed periods. We think that in order an election for state purposes may be a "general" one within the meaning of the Constitution, it must be state-wide, must recur at fixed intervals, and must also be so designated directly or impliedly by the law which provides for it. There is nothing in the Allen case which contradicts this conclusion. We hold, therefore, that since the plaintiff was not chosen to the office which he seeks at an election of the kind required by the Constitution, he is not entitled to it, and the defendant is. Judgment for defendant.

ROSS, C. J., and McALISTER, J., concur.