333 P.2d 295

Wesley BOLIN, as Secretary of State of the State of Arizona, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF MARICOPA, Honorable Warren L. McCarthy, a Judge thereof, and E. J. O'Malley, Respondents.

No. 6715.

Supreme Court of Arizona.

Dec. 18, 1958.

Robert Morrison, Atty. Gen., McCarty, Chandler & Udall, Tucson, for petitioner.

Whitney & LaPrade and Leon S. Jacobs, Phoenix, for respondents.

JOHNSON, Justice.

E. J. O'Malley, an elector and taxpayer, prior to the primary election, instituted an action in the Superior Court of Maricopa County, Arizona, seeking to enjoin the secretary of state from certifying to the various clerks of the county boards of supervisors of the state that there was an office to be filled by the electors for the unexpired term of Mit Sims, deceased, a member of the corporation commission of the State of Arizona, or from certifying the names of George F. Senner, Jr., J. W. Kelly or T. W. Liese, or any other names for such office.

Mit Sims was the duly elected corporation commissioner for the term ending January 2, 1961, having been elected for a six-year term at the 1954 general election. Commissioner Sims died on, or about the 24th day of July, 1957, creating a vacancy in the office, and pursuant to law the governor appointed George F. Senner, Jr., to the office, who thereafter qualified and is now the duly acting commissioner.

Democrats George F. Senner, Jr. and J. W. Kelly, and Republican T. W. Liese each filed nomination petitions to have their names placed on the primary election ballot to fill the unexpired term of deceased commissioner Sims for the ensuing two years.

The trial court issued an order granting a preliminary injunction restraining the secretary of state from certifying to the various clerks of the boards of supervisors, as the law requires, the names of any candidates for corporation commissioner at the primary election for a term ending January 2, 1961.

Thereafter the secretary of state, on August 13, 1958, filed an original proceeding in this court for a writ of prohibition against respondents, the Superior Court of Maricopa County, the Honorable Warren L. McCarthy as judge thereof, and E. J. O'Malley, restraining the court and judge thereof from enforcing the order granting the preliminary injunction. The primary election was set by law for September 9,

1958, and time being of the essence this court, after a hearing, first issued an alternative writ of prohibition, and on August 15, 1958, made the writ peremptory; even though we were somewhat uncertain as to the law it was felt this was the safe thing to do. It was stated that a written decision would follow. We now state our reasons for the action taken.

Petitioner contends that Senner, Kelly and Liese, the prospective candidates for nomination, were indispensable parties to the suit for injunction, thus depriving the lower court of jurisdiction. It is true that if these persons were indispensable parties the lower court acted in excess of its jurisdiction, and an application for a writ of prohibition to this court is the proper remedy.

This court, in the very recent case of Siler v. Superior Court, 83 Ariz. 49, 316 P.2d 296, approved the test for indispensable parties set out in Barron and Holtzoff, Federal Practice and Procedure, Vol. 2, Section 512, pp. 58 and 59, which rule reads as follows:

"* * * Indispensable parties are those who have such an interest in the subject matter that a final decree cannot be made without either affecting their interest or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience.

The test of indispensability therefore is whether the absent person's interest in the controversy is such that no final judgment or decree can be entered which will do justice between the parties actually before the court, without injuriously affecting the rights of others not brought into the action."

Applying this test to the instant action we believe there is little doubt that any judgment entered between the parties actually before the court would injuriously affect the rights of Senner, Kelly and Liese, who had each obtained and filed the legal number of signatures from electors on their nomination petitions for the office. They would be denied their right to appear on the ballots for the primary election, and actually be denied their right to seek public office without ever having had a day in court. To deny these candidates their right under the law and so defeat the will of the electors who signed their nomination petitions without making them parties to the proceedings, is in effect to deny them justice and a day in court. We hold that they were indispensable parties in the proceedings before the lower court.

The primary and general elections have now been held resulting in Senner's election and the case is now actually moot, but it is of great public concern not only to the parties involved but as a guidance for the future, and for that reason should be determined on the principal issues presented.

The respondents contend that the appointment of George F. Senner, Jr., to fill the vacancy caused by the death of commissioner Sims, was for the remainder of his unexpired term, and that no necessity existed for the nomination of candidates at the primary election as there was no vacancy to be filled by the electors at the general election to be held in November, 1958.

The authority of the Governor to fill the vacancy caused by the death of commissioner Sims is contained in Arizona Constitution, Article 15, Section 1, A.R.S., and reads in part as follows:

"* * * In case of vacancy in said office, the Governor shall appoint a commissioner to fill such vacancy. Such appointed commissioner shall fill such vacancy until a commissioner *shall be elected at a general election* as provided by law, and shall qualify. The qualifications of commissioners may be prescribed by law." (Emphasis supplied.)

The question for our determination is whether the term "general election", as used in Article 15, Section 1, supra, means the general election at which a corporation commissioner would be elected in the usual course of events at the expiration of the full term for that office, or does it refer to the next regular biennial general election closest in point of time after the vacancy occurs?

■ Article 7, Section 11, of the Arizona Constitution designates the biennial election to be held on the first Tuesday after the first Monday in November of even numbered years to be a "general election"; so it is apparent the phrase "general election" has a constitutionally defined, fixed and uniform meaning. This court has further defined "general election" in Hudson v. Cummard, 44 Ariz. 7, 33 P.2d 591, as one for a definite purpose, regularly recurring at fixed intervals without any other requirement than the lapse of time. See also Allen v. State, 14 Ariz. 458, 130 P. 1114, 44 L.R.A.,N.S., 468; Estes v. State, 48 Ariz. 21, 58 P.2d 753.

It then becomes necessary for us to determine what the framers of our Constitution meant when they used the phrase "a general election" in Article 15, Section 1, supra.

The courts are in conflict as to the meaning of the various phrases such as "next general election"; "next annual election"; "next regular election"; "next election"; "a general election"; and others as used in the various state constitutional and statutory provisions for the time of an election to fill vacancies in public offices. One line of authorities interprets such phrases as meaning the next election at which a successor to the incumbent of the office would have been elected if there had been no vacancy and according to another line of cases, apparently the majority rule, at least numerically, the election referred to is the election next in point of time after the vacancy occurs. See Annotations, 50 L.R.A.,N.S., 336, 359; 132 A.L.R. 574. We do not believe that these decisions are necessarily controlling in the instant case which must be determined by an interpretation of our constitutional and statutory provisions, as well as the general policy of our government and the construction heretofore placed upon the provisions involved by administrative officers.

■■ We realize that the construction placed upon the Constitution by administrative officers of the state is not binding, but certainly such construction should be considered in the interpretation of the Constitution by this court. Fairfield v. Foster, 25 Ariz. 146, 214 P. 319; Bohannan v. Corporation Commission, 82 Ariz. 299, 313 P.2d 379; 11 Am.Jur., Constitutional Law, §§ 78 and 80. We will take judicial notice of our records and the records of election matters on file in the office of secretary of state, Brown v. Superior Court, 81 Ariz. 236, 303 P.2d 990; and these records reveal that this is the fourth occasion since statehood in which such a vacancy has occurred on the corporation commission, i. e., where the commissioner had more than two years of his term remaining unserved.

The first vacancy occurred in 1933, when the then commissioner resigned, and thereafter three incumbent commissioners died

in office and in each instance the vacancy was filled by appointment. In each case all of the officials of the state having duties concerning elections interpreted the Constitution, Article 15, Section 1, supra, as requiring an election to fill the vacancy at the next general election closest in point of time.

We believe it to be the general policy of representative government where the officers, the servants of the people, are chosen by election, that the electorate, by the exercise of their franchise, shall have the right and opportunity at the earliest possible date of selecting officers to fill vacancies in elective offices with a person of their own choice. This is in accord with the expression of Judge Lockwood, speaking for this court in State ex rel. Sullivan v. Moore, 49 Ariz. 51, 64 P.2d 809, 815, as follows:

"* * * It thus appears that it was the policy of the makers of the Constitution that no appointment by the Governor to fill a vacancy should extend beyond the first Monday in January following the next regular biennial election. * * *"

This court held in the Moore case, supra, that a vacancy on the tax commission (a legislative and not a constitutional office) must be filled by election for the unexpired term, and the following language is particularly applicable in the instant case:

"* * * This conclusion is in harmony with the general spirit and provisions of the Constitution, with the obvious intent of the Legislature, and with the general principles of democracy, which require that offices which are elective in their nature should, as far as practicable, be filled by election. * * *" State ex rel. Sullivan v. Moore, supra, 64 P.2d at page 816.

Undoubtedly the framers of our Constitution could have made the provisions of Article 15, Section 1, supra, where the words "shall be elected at a general election" appear, more explicit and certain, and had they desired they could have stated in so many words that the appointed officer would hold office for the unexpired term. This they did not do. It is a sound rule of construction that when the duration or term of an office which is filled by election is a question of doubt or uncertainty, that interpretation is to be followed which limits it to the shortest time and returns to the people at the earliest period the power and authority to refill it. 43 Am.Jur., Public Officers, Section 154.

We hold that the language used in Article 15, Section 1, supra, "Such appointed commissioner shall fill such vacancy until a commissioner shall be elected at a general election as provided by law, and shall qualify." means that the vacancy in

the office of the corporation commission such as existed here must be filled at the next general election closest in point of time after the vacancy occurs.

■ Respondents further contend that A.R.S. Subsection C of Section 38–295 is controlling. That section reads:

"Vacancies occurring in an office, or in the membership of a board or commission, shall be filled only for the unexpired term of the officer or member."

We do not believe that this section has any application to vacancies occurring in the office of corporation commissioner. This is a general statute which applies only to vacancies occurring in an office or in the membership of a board or commission, where no particular provision is made for the filling of such vacancies.

Arizona Constitution, Article 15, Section 1, supra, contains a specific provision for filling vacancies in the office of corporation commissioner, and this language is used therein:

" * * * Such appointed commissioner shall fill such vacancy *until a commissioner shall be elected at a general election * * *."* (Emphasis supplied.)

Should we follow the contention of respondents that A.R.S. Subsection C of Section 38–295 was controlling and the appointed officer held office for the unexpired term, then the language of the Constitution, providing the appointed commissioner shall fill such vacancy until a commissioner shall be elected at a general election, is meaningless. In other words, if an appointee holds for the unexpired term, then there could never be a commissioner elected at a general election to fill a vacancy.

■ It is unquestionably the law that a general statutory enactment cannot control a specific constitutional provision, particularly when the statutory enactment conflicts with the Constitution.

It was for these reasons that we made the alternative writ of prohibition peremptory.

UDALL, C. J., WINDES, J., and R. C. STANFORD, Jr., Judge of Superior Court, concurring.

STRUCKMEYER, J., concurs in the result.

NOTE:

Justice M. T. PHELPS, having been out of the state when this matter was first considered, the Court invited Honorable R. C. STANFORD, Jr., to sit in his stead.