417 P.2d 744

The BOARD OF SUPERVISORS OF MARI-
COPA·COUNTY, L. Alton Riggs, William S.
Andrews, B. W. Burns, Clerk of the Board,
Rhea Woodall, and Election Director, John
E. Burke, Petitioners,

v.

The SUPERIOR COURT of the State of Ari-
zona, IN AND FOR the COUNTY OF
MARICOPA, and Edwin Thurston, as a
Judge thereof, Charles Christakis, real
parties in interest, Respondents.

I CA–CIV 453.

Court of Appeals of Arizona.

Aug. 31, 1966.

Rehearing Denied Oct. 4, 1966.

Review Denied Jan. 24, 1967.

Robert K. Corbin, County Atty., by James Douglas McVay, Deputy County Atty., for petitioners.

Charles Christakis, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of prohibition to restrain and prohibit the Superior Court of the State of Arizona from enforcing its order of 3 August, 1966, granting a writ of mandamus ordering the Maricopa County Board of Supervisors, the Clerk of the Board of Supervisors, and the County Election Director to place petitioner's name on the primary ballot as a nonpartisan candidate for Judge of the Superior Court of the State of Arizona in and for the County of Maricopa, Division One.

We granted a hearing on the application and the matter was argued before us on 10 August, 1966. The election ballots had to be printed in time (16–531 A.R.S.) for the primary election to be held 13 September, 1966, and we therefore announced our decision on the day of the hearing as follows:

"IT IS FURTHER ORDERED reversing the Superior Court and vacating the writ heretofore issued by that Court. The officials of Maricopa County are directed to prepare and at the primary election to distribute a proper nonpartisan ballot. * * * A formal written opinion will follow."

We felt this procedure to be proper under the particular circumstances. Bolin v. Superior Court, 85 Ariz. 131, 333 P.2d 295 (1958).

We are called upon to interpret the election laws of the State of Arizona concerning nonpartisan candidates for public office.

Respondent Charles Christakis filed nomination petitions pursuant to 16–301 A.R.S., as a nonpartisan candidate for the office of Judge of the Superior Court of the State of Arizona in .and for the County of Maricopa, Division One. The nominating petition (as distinguished from a nominating paper) was timely filed. After being advised that the Maricopa County Election Director did not intend to place petitioner's name on the primary ballot as a nonpartisan candidate for this office, petitioner brought an original mandamus action in the Superior Court to compel the placing of his name upon the said primary ballot.

On 2 August, 1966, respondent Superior Court Judge ruled in favor of petitioner below, and the respondents below, petitioners herein, sought a writ of prohibition and an alternative writ of .certiorari in this Court to prohibit the respondent Superior Court Judge from enforcing his order signed 3 August, 1966. Because petitioner would have no adequate remedy at law by way of an appeal as the issue would be moot once the primary election was held, or the time for the starting of absentee balloting had passed, Rapier v. Superior Court, 97 Ariz. 153, 398 P.2d 112 (1964), we granted this extraordinary writ.

The primary election system as practiced in Arizona is a nominating device intended to be a substitute for party caucuses and conventions. The Arizona primary law provides a nonpartisan candidate a means by which his name may be placed on the general election ballot. Section 16–551, subsec. A states:

"At primary elections there shall be provided a separate ballot for each party entitled to participate in the primary, and also a blank ballot on which shall be printed only the titles of the officers to be voted for by the electors at the polling place for which the ballot is

printed, to be used by nonpartisan voters."

Section 16–571, subsec. A in part states:

"* * * A candidate for nonpartisan nomination for an office who has received the largest number of votes of the candidates for the nomination for that office upon the nonpartisan ticket shall be declared a nonpartisan nominee for the office."

There appears to be a statutory conflict as to whether a nonpartisan candidate's name may appear on the primary ballot. Section 16–551, subsec. A would seem to indicate that the legislature contemplated a write-in campaign exclusively for primary candidates as it provides that there shall be provided a "blank ballot on which shall be printed only the titles of the officers to be voted for by the electors." However, Section 16–301, subsec. A as amended states:

"Any person desiring to become a candidate at a primary election for a party or a nonpartisan nomination and to have his name printed on the official ballot, shall, not less than sixty nor more than ninety days before the primary election, file a nomination petition signed by the candidate, giving his place of residence and post office address, naming the party of which he desires to become a candidate, or that he desires to become a nonpartisan candidate and giving the date of the primary election."

Section 16–303 provides:

"In addition to the nomination petition required, any candidate desiring to have his name printed on the official ballot to be used at any primary election shall, within the same time and with the same officer as provided by § 16–301, file a nomination paper * * *."

The statute provides that such nomination paper contain a certain number of signatures of qualified electors who are members of the candidate's party (16–303, 16–304, 16–305 A.R.S.).

It would appear that there are two methods by which a nonpartisan candidate for public office may have his name printed on the general election ballot. First, if he wishes to have his name printed on the primary election ballot, he must seek a certain number of signatures on a nomination paper and file this properly signed paper together with his nomination petition with the proper office. His name will then appear on the primary ballot and if he is successful in the primary election, his name will appear on the general election ballot. Second, he may have fellow nonpartisan electors write in his name on the nonpartisan primary ballot for the office sought at the primary election, and if he receives a sufficient number of write-in votes (16–571, subsec. C), his name will then be placed on the general election ballot subject to the same requirements of all candidates for public office in complying with the primary and general election laws. Board of Supervisors of Pima County v. Harrington, 85 Ariz. 163, 333 P.2d 971 (1958).

The question is raised concerning the number of signatures needed on the nominating paper or write-in votes in the primary to place the candidate on the general election ballot. Section 16–305, subsec. A, par. 3 as amended indicates the actual number of signatures required on the nomination paper:

"If for a candidate for * * * superior court judge, by a least three per cent but not more than ten per cent of the total vote of the party designated in the county or district, provided that in counties with a population of two hundred thousand or more, a candidate for * * * superior court judge, shall have nomination papers signed by at least one per cent but not more than ten per cent of the total vote of the party designated."

* * * * * *

"B. The basis of percentage in each instance referred to in subsection A, except in cities and towns, shall be the

vote of the party for governor at the last preceding general election at which a governor was elected. * * * " 16–305, subsec. B.

And Section 16–571, subsec. C states: "A certificate of nomination shall not be issued to a write-in candidate unless he receives a number of votes equivalent to at least the same number of signatures required by § 16–305 for nominating papers for the same office."

"Broadly speaking, what a primary election is to the general, the nomination paper * * * is to the primary." 25 Am.Jur., Elections, Section 156, page 850. It would appear that petitioner would have had to file a nomination paper containing one percent of the votes cast for the nonpartisan candidate for governor in Maricopa County at the last election or that he will have to receive as a write-in candidate the same number of write-in votes in the primary in order that he may be placed upon the general election ballot in Maricopa County. What that amount will be is a fact determination to be made by the Superior Court, and we are not called upon, in this case, to so determine. In any event, we are unwilling to exclude a nonpartisan candidate from the requirement that he go to the members of a political sector to which he feels he belongs and seek their permission, via the nomination paper, to the placing of his name upon the primary ballot, regardless of how few people comprise this political sector, and how few signatures are needed on the nomination paper.

In argument before this Court, the parties agreed that in Maricopa County there are more than 2,500 registered nonpartisan voters along with petitioner. We do not feel that it is impossible for petitioner to obtain a sufficient number of signatures or votes from this group to have his name placed upon the primary and general election ballot.

It may be contended that petitioner is seeking a shortcut to the general election ballot which was not contemplated by the legislature particularly in the case of judicial offices wherein the candidates are placed "above the line" without party designation. This may well be the case. However, we do not feel that the legislature intended that a candidate, because he is registered nonpartisan, should be deprived of the right to have his name placed upon the primary and general election ballots simply because of his nonpartisan registration.

The order heretofore signed by the Judges of the Court is reaffirmed. The writ previously issued by respondent Superior Court is hereby vacated.

STEVENS, C. J., and DONOFRIO, J., concur.