No. 82-28

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

———————————

STATE OF MONTANA ex rel. ROBERT PALMER
and GERMAINE CONRAD,

Petitioners and Respondents,

vs.

FERN HART, et al.,

Respondents and Appellants.

———————————

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellants:

Robert L. Deschamps, III, County Attorney, argued,
Missoula, Montana
Nancy K. Moe argued, Missoula, Montana

For Respondents:

Cummings Law Firm, Missoula, Montana
Edward A. Cummings argued, Missoula, Montana
Moses Law Firm, Billings, Montana
Charles F. Moses argued, Billings, Montana

———————————

Submitted: September 10, 1982

Decided: December 22, 1982

Filed: DEC 22 1982

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Appellants, the Clerk and Recorder and the Elections and Recording Supervisor of Missoula County, appeal from an order of the Missoula County District Court in which they were permanently enjoined from holding an election to recall respondents Palmer and Conrad. We affirm the decision of the District Court.

Respondents Conrad and Palmer are the duly elected and acting County Commissioners of Missoula County. Conrad was sworn into office on November 10, 1980, and Palmer on January 5, 1981. Several hours after Palmer assumed office, he and Conrad met and, intentionally excluding the third commissioner, began discussions and actions to reorganize the county's administrative staff.

These acts generated considerable controversy in Missoula County. On January 14, 1981, affidavits in support of recall petitions and sample recall petition circulation sheets against the two were filed with the elections supervisor for approval as to form pursuant to section 2-16-617(3), MCA, the Montana Recall Act. The petitions were approved as to sufficiency of form and were certified by the elections supervisor on January 19, 1981.

The petitions were then circulated and 675 circulation sheets for each petition were filed with the elections supervisor in several groups. The first 100 pages of each petition were filed on March 20, 1981. Pages 101-200 were filed on March 27, 1981. Pages 201-300 were filed on April 3, 1981. The final circulation sheets of the petitions, pages 301-675, were filed on April 9, 1981.

As the elections supervisor received the pages of the

-2-

two petitions, the following procedures were used to check petition signatures: (1) each signature was checked against a computer listing of registered voters; (2) if there was any question concerning a signature's form or the listed address for the elector, that signature was compared with the original registration card on file; (3) five signatures out of twenty on each page were compared with the original registration cards and those cards were flagged; if one signature did not match, all signatures on the page were compared with those on file; (4) all petition pages were reviewed for possible duplications, for husbands signing for wives or wives signing for husbands, and for any other questionable signatures. Using this method, eight duplicate signatures and three fraudulent signatures were disqualified. Approximately 2200 signatures were actually compared.

On April 16, 1981, the elections supervisor certified to the county clerk and recorder that 8,526 signatures were valid for the purpose of a recall petition against Conrad and 8,606 signatures were valid for the recall petition against Palmer.

Conrad and Palmer filed separate petitions in District Court seeking declaratory and equitable relief to prevent appellants from conducting a recall election. Temporary restraining orders were issued in both cases. The causes were consolidated and were tried before the District Court sitting without a jury on August 31, 1981. The facts giving rise to the litigation were stipulated to by counsel for the parties.

On September 9, 1981, the District Court entered its findings of fact, conclusions of law, judgment and order

permanently enjoining the elections supervisor and the county clerk and recorder from proceeding with recall elections. The District Court concluded that the recall petition against Palmer had been impermissibly filed within two months of his assumption of office, that the validation process used in verifying signatures was in substantial variance with the statutory requirements for verification and was therefore fatal to the recall petition, and that the recall petitions were held for verification for longer than the fifteen days permitted by statute.

Appellants present three issues on appeal:

1. Whether the submission of a recall petition for approval as to form constitutes a filing of the petition under section 2-16-613(2), MCA;

2. Whether the signature certification process used by the elections supervisor was fatal to the recall petition; and,

3. Whether section 2-16-620(3), MCA, requires the certifying officer to compare and verify the signatures on all of the circulation sheets of a petition within fifteen days.

The Montana Recall Act, section 2-16-601 et seq., MCA, was enacted as Initiative 73 and was approved by the voters of the state on November 2, 1976. The Act was subsequently amended by the 1977 legislature.

In construing legislation, the function of this Court is simply to ascertain and state what in terms or in substance is contained within the legislation. State Bar of Montana v. Krivec (1981), ____ Mont. ____, 632 P.2d 707, 710, 38 St.Rep. 1322, 1324; Dunphy v. Anaconda Company

-4-

(1968), 151 Mont. 76, 80, 438 P.2d 660, 662. Where the language of the statute is plain, unambiguous, direct, and certain, the statute speaks for itself. State v. Roberts (1981), ____ Mont. ____, 633 P.2d 1214, 1217, 38 St.Rep. 1551, 1554. In short, it is this Court's duty to construe the law as it finds it. In the Matter of the Estate of Baier (1977), 173 Mont. 396, 401, 567 P.2d 943, 946. The same rules applicable to judicial interpretation of legislation enacted by the legislature apply to the interpretation of initiatives. Krivec, 632 P.2d at 710.

The recall process has been characterized as a special, extraordinary, and unusual proceeding, State ex rel. Landis v. Tedder (1932), 106 Fla. 140, 143 So. 148, 149, and as a harsh remedy, Cloud v. Dyess (La.App. 1965), 172 So.2d 528; State ex rel. Baggett v. Long (La.App. 1952), 60 So.2d 96. Even where the recall right stems from a constitutional provision, a failure to substantially comply with the statutory requirements that govern the process is fatal to the recall. Fiannaca v. Gill (1962), 78 Nev. 337, 372 P.2d 683, 687. Where the basis for the procedure is purely statutory, as here, failure to comply with the recall statutes is fatal to any recall attempt. Gibson v. Campbell (1925), 136 Wash. 467, 241 P. 21, 23; State ex rel. McCauley v. Gilliam (1914), 81 Wash. 186, 142 P. 470; cf., Platt v. Ross (1933), 112 Fla. 502, 150 So. 716. The legislature may impose rational restraints upon the exercise of the statutory right to recall. Eisenberg v. Committee to Recall Levin (1980), 175 N.J.Super. 115, 417 A.2d 1067, 1070; Petition of Smith (1971), 114 N.J.Super. 421, 276 A.2d 868, 876. Finally, to liberally construe the statutes governing

the exercise of the power to recall does not constitute a license to totally ignore the requirements of those statutes. Hazelwood v. Saul (Colo. 1980), 619 P.2d 499, 501.

The Montana Recall Act provides as a specific limitation that "[n]o recall petition shall be filed against an officer until he has held office for two months." Section 2-16-613(2), MCA. Here, sample recall petitions and supporting affidavits were submitted to the elections supervisor for approval as to form pursuant to section 2-16-617, MCA, within ten days of Palmer's assumption of office. Appellants contend that this "submission" of sample petitions is not violative of the limitation set in section 2-16-613(2), MCA, since no signed petitions were filed until Palmer had been in office for two months. We disagree.

The statutory limitations set out in the Montana Recall Act express a clear intent that the recall procedure not be lightly undertaken: no more than one officer may be named in a recall petition; no petition may be filed against an officer until he has held the office for two months; no recall petition may be filed against an officer who has been the subject of a recall election within the preceding two years unless election costs for the preceding recall have been refunded. Section 2-16-613, MCA. These limitations ensure that this harsh remedy is taken only after an officer has been in office a sufficient amount of time to allow the voters to determine that he is not doing a satisfactory job, and to furnish a cooling-off period so that election issues and controversies are not confused with performance in office.

Here, the sample recall petitions that were required to be approved as to form in order to begin the recall process were submitted within ten days of Palmer's swearing-in. This clearly violates the two-month "cooling-off" period provided as a specific limitation on the recall elections. Cf. Tangeman v. Coater (1911), 51 Colo. 208, 117 P. 145. Palmer was not allowed to establish himself in office and to provide a record of actions by which voters could judge his exercise of the office. Appellants now attempt to define the presentment of the sample petitions as a "submission" rather than a "filing" and argue that, therefore, it was outside of the statutory limitation. This contention fails.

The filing of the sample petitions began the recall election process. The stipulated facts in this case characterized the action as a filing. Additionally, we have long recognized that depositing papers with the proper custodian for keeping constitutes a "filing." Pierce v. Pierce (1939), 108 Mont. 42, 45, 89 P.2d 269, 270, and cases cited therein. The filing of the sample recall petitions and supporting affidavits within the two-month limitation constitutes a violation of that limitation.

Appellants next challenge the District Court's conclusion that the signature verification process used by the elections supervisor was in substantial variance with the statutory requirements and was therefore fatal to the recall petitions. The appellants argue that the statute does not specifically require that each signature be compared; that to compare all signatures would be almost physically impossible within the fifteen-day limit set by section 2-

16-620(3), MCA, and that the use of the procedure established in Title 13, Chapter 27, MCA, for the verification of signatures on petitions for initiatives, referendums, constitutional conventions and constitutional amendment is within the discretion of the certifying officer. Again, we disagree.

The Montana Recall Act requires the county clerk to "compare the signatures of the electors in such county with registration signatures on file in such clerk's office and, if satisfied the signatures are genuine, certify that fact." Section 2-16-620(1), MCA. We must construe the statute from the plain meaning of the words used. State v. Weese (1980), ___ Mont. ___, 616 P.2d 371, 373, 37 St.Rep. 1620, 1622. The language of this statute, using "shall" rather than "may," mandates that the signatures be compared. State ex rel. McCabe v. District Court (1938), 106 Mont. 272, 277, 76 P.2d 634, 637. The statutory language does not grant discretion in the matter to the clerk. The appellants did not meet the statutory mandate by applying the statutory procedure.

This Court must ascertain and declare the substance of the statute it construes. We may not insert what has been omitted. Section 1-2-101, MCA. Chennault v. Sager (1980), ___ Mont. ___, 610 P.2d 173, 176, 37 St.Rep. 857, 861. Here, the plain and unambiguous language of the statute requires the signatures on the petitions to be compared with the signatures on the voter registration cards. Cf., Jaffe v. Allen (1978), 87 Mich.App. 281, 274 N.W.2d 38, 40; Cirac v. Lander County (1979), 95 Nev. 723, 602 P.2d 1012, 1016; Cloud v. Dyess, supra. While it might be to appellants'

advantage to allow the clerk's office the discretion to utilize the less arduous signature comparison procedure provided by statute for use in other petition processes, this Court may not do so. We must presume that the legislative body, in this case the voters of the state, knew what it was doing. Dept. of Revenue v. Burlington Northern, Inc. (1976), 169 Mont. 202, 211, 545 P.2d 1083, 1088. The District Court was correct in holding the signature comparison process here was in substantial variance with the statutory requirements and was therefore fatal to the recall petition.

Finally, appellants argue that the District Court erred in its application of section 2-16-620(3), MCA. This section of the recall act provides that, "[t]he county clerk may not retain any petition or any part of it for more than fifteen days." No set of petition sheets was held for longer than nine days and only twenty-seven days elapsed from the turning in of the first set of petition sheets and the verification of all petition sheets. Appellants argue that the purpose of the fifteen-day limit is simply to prevent the official who is responsible for verification of the signatures from dragging his feet and to ensure that the process moves along. They contend, therefore, that section 2-16-620(3), MCA, requires only that the county clerk compare and verify the signatures on any given set of petition sheets within the fifteen-day limit. We reject this contention.

Viewing the Montana Recall Act as a whole and section 2-16-620(3) by itself, it is clear that references to "a petition" refer to the collective group of circulation sheets containing the voters' signatures rather than to one

of the individual circulation sheets. The language in section 2-16-620(3), requiring that "any petition or any part of it" (emphasis added) makes this clear. The statute dealing with the form of the circulation sheets, section 2-16-617, MCA, also clearly differentiates the two.

Appellants also argue that the only purpose of the fifteen-day limit is to ensure that the verifying official does not delay the process and bar an election by "sitting forever" on petitions. This argument, too, fails. Should the official charged with filing a petition refuse to do so when the petition is legally sufficient, the Montana Recall Act provides a writ of mandamus as a remedy to the petitioners. Section 2-16-615, MCA.

The District Court was correct in holding that Palmer and Conrad were entitled to relief in the form of a permanent injunction. See State ex rel. Landis v. Tedder, supra.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

-10-

_____

_____
            Justices

_____
Honorable Nat Allen, District
Judge, sitting in place of
Mr. Justice John C. Sheehy