758 P.2d 138

Elinor GREEN and Joel Hunter III, husband and wife, taxpayers and electors, Petitioners,

v.

Karen E. OSBORNE, in her capacity as Acting Secretary of State of the State of Arizona, Respondent.

Jack LONDEN; Rose Mofford; John (Jack) Oertle, Sr.; John Jay Rhodes; Bernie Senter; Carolyn Warner; and Evan Mecham, Real Parties in Interest.

No. CV–88–0142–SA.

Supreme Court of Arizona, En Banc.

June 14, 1988.

Lewis & Roca by Andrew S. Gordon, Phoenix, for petitioners.

Robert K. Corbin, Atty. Gen. by Steven J. Twist, Chief Asst. Atty. Gen., Jessica Gifford Funkhouser, Special Counsel, Chip Wagoner, Asst. Atty. Gen., Phoenix, for respondent.

Dioguardi, Poli & Ball, Ltd. by Mark D. Dioguardi, James B. Ball, Phoenix, for Jack Londen.

Meyer, Hendricks, Victor, Osbo by David G. Campbell, Phoenix, for Rose Mofford.

Law Offices of Howard, DeRoon & Seyffer by Michael E. Riikola, Phoenix, for John J. Rhodes.

Bill Stephens & Associates, P.C. by William H. Anger, Phoenix, for Carolyn Warner.

Cromwell & U'Ren by Stephen A. U'Ren, Phoenix, for intervenors.

John C. Oertle, Sr., Tempe, pro se.

Bernie Senter, Phoenix, pro se.

HOLOHAN, Justice.

The petitioners filed a petition for special action in this court to enjoin the acting Secretary of State from proceeding with the recall election for Governor scheduled for May 17, 1988. We have original jurisdiction of an action for an injunction or other extraordinary writs to state officers. Art VI, § 5(1).[1] Also named as respondents in the petition were the former governor and the several candidates who had filed nomination papers to appear in the May 17 election. We granted an accelerated hearing on the petition, heard oral argument by the parties, and issued a ruling. By written order we ruled that the relief sought in the petition was granted, and we stated that a written opinion would be filed at a later date. We now submit that opinion.

The essential facts are not in dispute. Evan Mecham was elected Governor of the State of Arizona at the general election in November, 1986. He assumed his duties as Governor on January 5, 1987. After serving six months in office, a group known as the Mecham Recall Committee filed an application, pursuant to A.R.S. § 19–202.01, with the Secretary of State, to undertake the circulation of petitions demanding the recall of the governor. Within the time required by statute 387,157 signatures were gathered and submitted to the Secretary of State for verification. A.R.S. § 19–205. On January 26, 1988, the Secretary of State filed the petition after having determined that 301,032 petition signatures were those of qualified electors and exceeded the minimum number required by the Arizona Constitution for requiring the holding of a recall election. Art. VIII, pt. 1 § 1; A.R.S. § 19–208.03. Upon filing the petition, the Secretary of State notified the Governor that he had five days to resign or a recall election would be ordered. Art. VIII, pt. 1 § 3. The governor declined to resign. On February 1, 1988, the Secretary of State ordered that a special election be held on May 17, 1988, to determine whether the Governor should be recalled. *Id.* Candidates who wished to be included on the recall election ballot were required to file their nomination papers not less than 60 days prior to the recall election. A.R.S. § 19–212(D).

While the recall process was in progress, the Arizona House of Representatives had commenced an investigation of the activities of the governor which ultimately led to the House voting on February 5, 1988, to impeach the governor.

The governor was tried in the Arizona Senate on the Articles of Impeachment filed by the House, and, on April 4, 1988, the governor was convicted on two of the Articles. Pursuant to Art. VIII, pt. 2 § 2, his conviction by the Senate resulted in his removal from the office of Governor.

Pursuant to Art. V, § 6, the Secretary of State, Rose Mofford, succeeded to the Governorship, and on April 5, 1988, she took the oath of office as Governor. Pursuant to Art. V, § 6, the taking of the oath of office as governor by Rose Mofford consti-

---

**1.** The references to the Arizona Constitution will be cited in a shortened form by article and section.

tuted resignation from the office of Secretary of State.

On April 7, 1988, the acting Secretary of State, Karen Osborne, acting on the advice of the Attorney General, deleted the name of former Governor Mecham from the recall ballot. In addition she deleted from the ballot the statement of reasons for demanding recall and the officeholder's "justification of his course in office." *See* Art. VIII, pt. 1 § 3.[2]

On April 8, 1988, the present petition was filed in this court to enjoin the acting Secretary of State from proceeding with the recall election because the Governor's removal by the Senate had mooted the recall election.

Elections are political matters to be decided by the electorate, but the legality of holding an election is a judicial question to be decided according to the requirements of the constitution. *State v. Osborne*, 14 Ariz. 185, 125 P. 884 (1912). The issues in this case raise important questions involving the proper interpretation of conflicting provisions of the Arizona Constitution. The courts have the duty of ensuring that the constitutional and statutory provisions protecting the electoral process are not violated. *Tilson v. Mofford*, 153 Ariz. 468, 737 P.2d 1367 (1987).

Preliminarily, however, we are met by the claims of several of the real parties in interest, who are candidates certified to appear on the recall ballot, that it is not necessary for the court to resolve the conflicting provisions of the state constitution applicable to this situation because the state is estopped from cancelling the election. The candidates contend that they, as well as many voters, justifiably relied to their detriment upon the Secretary of State's order calling the special election and the Attorney General's opinion stating that the election "shall be held even if the Governor later resigns or is removed from office prior to the election date." Ariz. Atty.Gen.Op. I88–015 (January 21, 1988). In reliance thereon, "[t]hese voters and

candidates have expended considerable amounts of time, effort and money, and have made commitments and incurred obligations, and otherwise acted in a manner detrimental to their lives." Brief for Real Party in Interest Jack Londen at 3.

Ordinarily, a claim of equitable estoppel is made out when a person justifiably relies on the conduct of another to their detriment. *Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 730 P.2d 235 (1986). Generally, however, the defense of estoppel does not apply against the state in matters affecting governmental or sovereign functions. *Mohave County v. Mohave–Kingman Estates*, 120 Ariz. 417, 586 P.2d 978 (1978). Nor may the state be estopped by the unauthorized acts of its officers or employees. *Freightways, Inc. v. Arizona Corporation Commission*, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981). Furthermore, reliance on an Attorney General opinion does not support a claim of estoppel. While we have said that citizens may, in good faith, rely on such opinions until the courts have spoken, *Marston's, Inc. v. Roman Catholic Church*, 132 Ariz. 90, 644 P.2d 244 (1982), such opinions are advisory only and do not bind courts of law, and they are not a legal determination of what the law is at any certain time. *State v. Deddens*, 112 Ariz. 425, 542 P.2d 1124 (1975).

Despite the Attorney General's opinion there was considerable speculation and division of opinion among attorneys whether a recall election would be proper in the event that the governor was removed from office. The speculation surrounding the subject was reviewed in the media. In circulating their nomination petitions while the Senate was trying the governor the candidates must, surely, have realized that there was a question being raised about the inevitability of the election if the governor was convicted.

We do not believe that the candidates have established a case of estoppel.

---

**2.** These deletions and petitioners' request to cancel the recall election have not been challenged by former Governor Mecham. Although joined as a respondent in this case, he has filed no pleadings, nor has he appeared personally or through counsel.

Additionally, we point out that the state is not estopped from cancelling an illegal election. The provisions of the constitution control in such matters, and although the candidates may have relied in good faith upon the Attorney General's opinion, that opinion cannot negate the provisions of the constitution nor the authority of this court to interpret it.

■ Some of the candidates also assert that to cancel the election would deny them the right to run for public office which would be a violation of their due process rights under the state and federal constitutions. The federal cases relied upon by the candidates do not deal with situations relevant to this case. Contrary to the assertion of the candidates, the right to a state political office is not a property right or liberty interest secured by the due process clause of the Fourteenth Amendment. *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944). Nor does every denial of a right conferred by state law involve a denial of equal protection of law unless there is shown to be present in the denial an element of intentional or purposeful discrimination of person or class of person. *Id.* The candidates are not denied due process or equal protection under law by the cancelling of the recall election.

■ Nor does the state constitution require a different conclusion. Elections, whether general or special, may not be held if they would conflict with the requirements of the constitution. *Hudson v. Cummard,* 44 Ariz. 7, 33 P.2d 591 (1934). It has long been recognized in this state that the judiciary has the constitutional authority to intervene and prevent the holding of an election which is proceeding in violation of law. *Abbey v. Green,* 28 Ariz. 53, 235 P. 150 (1925); *Kerby v. Griffin,* 48 Ariz. 434, 62 P.2d 1131 (1936). There is no constitutional right for a candidate to run in an illegal election. *Hudson v. Cummard, supra.* This principle has been recognized by other jurisdictions even in reference to recall elections. *Davis v. Friend,* 507 So.2d 796 (Fla.App.1987); *State ex rel. Palmer v. Hart,* 201 Mont. 526, 655 P.2d

965 (1982); *Pederson v. Moser,* 99 Wash.2d 456, 662 P.2d 866 (1983).

The real issue in this case is whether the recall election scheduled for May 17, 1988, could be held when the officeholder sought to be recalled has been removed from office by conviction in the Senate on Articles of Impeachment. Art. VIII pt. 2, § 2.

The Attorney General argues that there is no express language in the Arizona Constitution which permits the cancelling of a recall election ordered pursuant to Art. VIII, pt. 1, § 3. He argues that since the provisions of the constitution are mandatory, Art. II, § 32, "a special election shall be ordered to be held." The Attorney General concludes that the Constitution requires an election irrespective of any subsequent events.

The Attorney General relies entirely on the literal provisions of Art. VIII, pt. 1, § 3, but the Constitution is not a single article document nor is Article VIII somehow more important than other provisions of the Constitution which may apply to the current situation. Despite the Attorney General's legal position in this court, we note that he earlier advised the acting Secretary of State to remove the name of the former governor from the special election ballot and to strike the statements concerning the reasons for demanding recall and the officeholder's statement of justification. The Constitution, however, requires that the matters stricken appear on the election ballot. Art. VIII, pt. 1, §§ 3 and 4. It is obvious that the Attorney General concluded that the conviction of the governor in the State Senate changed the usual situation present in a recall contest, yet a literal reading of Art. VIII, pt. 1 does not authorize the removal from the recall ballot of the name of the officeholder or the statements dealing with the recall.

The unusual sequence of events which have occurred in this case are ones which, we can safely say, were never envisioned by the drafters of the Arizona Constitution. It is the duty of the court to review the several constitutional provisions which have become applicable to the situation since the conviction of the governor, and

we must resolve the conflicts in these provisions in a manner which is in harmony with the objectives and purpose implicit in the constitution.

The former governor's removal from office by conviction in the state senate has placed the Secretary of State in the Governor's chair. Art. V, § 6. The recall election ordered prior to the Secretary of State assuming the governorship, if allowed to continue, could result in removal of the new governor on May 17 despite a constitutional provision providing that she is not subject to recall until she has held office for six months. Art. VIII, pt. 1, § 5. Proceeding with the recall election would violate the six month limitation of Art. VIII. The current situation results in two conflicting provisions of the constitution possibly applying to the problem. Such an absurd result should be avoided, and the courts should adopt a construction of the constitution which avoids an absurdity. *Ruth v. Industrial Commission*, 107 Ariz. 572, 490 P.2d 828 (1971).

To resolve the conflict it is important to consider the primary purpose of the recall provision of the constitution. Over fifty years ago this court in *Abbey v. Green, supra,* described the purpose of the recall provision "to permit the electorate to get rid of an obnoxious and unsatisfactory officer with whom, for any or no reason whatever for that matter, they may have become displeased." *Id.*, 28 Ariz. 63, 235 P. 160. We are aware that the Arizona recall system also provides that not only is the officer removed but the voters choose his successor. Art. VIII pt. 1 § 4; *Abbey v. Green, supra.*

Under the unusual chain of events in this case, the State Senate by convicting the former governor under the impeachment provisions of the constitution, Art. VIII pt. 2 § 2, removed him from office and accomplished the primary purpose of the recall. By that action of the State Senate there was no one to recall. The constitution, Art. V § 6, provided for a successor—the Secretary of State. As noted earlier, the new governor is not subject to recall for six months, yet the respondents contend that the election must be held even though it could result in the removal of an officeholder not subject to recall and who was never the subject of the recall.

Whenever possible to do so, each provision of the constitution must be construed so that it harmonizes with all others without distorting the meaning of any such provision so that the intent of the framers may be given effect and carried out. *State v. Osborne, supra.* We conclude that the only sensible construction to be given to the constitutional provision applicable to this situation is that the action of the State Senate in convicting and removing the former governor from office accomplished the primary purpose of the recall election. The officeholder, the subject of the recall, had been removed from office; there was no one to recall. The constitution had provided for the installation of a new governor. There was no purpose to be served by the recall election. The target of the recall had been removed under another provision of the constitution and a successor had been installed by yet another provision of the constitution. The former governor having been removed pursuant to the constitution, the recall election to remove that individual became impossible. Recall of the new governor being prohibited by the Constitution, we granted the relief prayed for in the petition and enjoined the acting Secretary of State from proceeding with the recall election of May 17, 1988.

FELDMAN, V.C.J., MOELLER, J., and FRED C. STRUCKMEYER, Jr., Retired Justice, concur.

Chief Justice FRANK X. GORDON, Jr. did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, FRED C. STRUCKMEYER, Jr., Retired Justice of the Arizona Supreme Court, was designated to sit in his stead.

CAMERON, Justice, dissenting:

Our Constitution specifically provides when a recall election shall be held. Ariz. Const. Art. 8 pt. 1 § 3 provides:

> If he [the officer being recalled] shall not resign within five days after a Recall Petition is filed as provided by law, a

special election *shall* be ordered to be held as provided by law; to determine whether such officer shall be recalled.

The duty to order a recall election is based upon the determination of the sufficiency of the recall petitions and is mandatory. *Abbey v. Green*, 28 Ariz. 53, 59, 235 P. 150, 153 (1925). In this case, Governor Evan Mecham did not resign and an election was properly called.

The recall provisions in the Constitution under Art. 8 pt. 1 §§ 1, 2, 3, 4, 5 and 6 set up procedures not only for the removal of public officers, but also for the election of their successors. The Constitution contemplates that a recall election will be held even if the officer being recalled has his name removed from the ballot. *See* Ariz. Const. Art. 8 pt. 1 § 4 ("Unless he otherwise request, in writing, his name shall be placed as a candidate on the official ballot without nomination.")

In the instant case, Evan Mecham's name was removed from the recall ballot by operation of law since, after the recall petitions had been filed, he was impeached and removed from office. Because Evan Mecham has been removed from office by way of impeachment, he is not eligible for election to the office of Governor during the term of office for which he was originally elected and from which he was removed. *See Coleman v. Rose*, 74 Kan. 262, 86 P. 296 (1906); *Childs v. Dart*, 57 Minn. 261, 59 N.W. 190 (1894); *State ex rel. Danforth v. Alford*, 467 S.W.2d 55 (Mo. banc 1971); *Gelch v. Rhode Island*, 482 A.2d 1204 (R.I. 1984); *Thompson v. Crump*, 134 Tenn. 121, 183 S.W. 505 (1915); *accord People v. Ahearn*, 196 N.Y. 221, 89 N.E. 930 (1909); *Recall Bennett Committee v. Bennett*, 196 Or. 299, 249 P.2d 479 (1952).

In this case, Arizona law required the position of Governor be filled by the designated line of succession as found in Ariz. Const. Art. 5 § 6 *only* if the candidate who has won the recall election fails to qualify. *See* Art. 8 pt. 1 § 4 ("In the event that his successor shall not qualify within five days after the result of said election shall have been declared, the said office shall be va-

cant, and may be filled as provided by law.")

The Constitution does not require that the recall election be cancelled if the officer subject to recall is removed from office, or otherwise had his name removed from the ballot. Instead the Constitution provides that after such election, the office of Governor is filled by law under Art. 5 § 6 only if the successful candidate in the recall election fails to qualify.

Art. 8 pt. 1 § 4 is consistent with Art. 5 § 6 which states:

> In the event of the death of the Governor, or his ... removal from office ..., the Secretary of State, if holding by election, shall succeed to the office of Governor *until his successor shall be elected and shall qualify.*

Thus, even though the Secretary of State, Rose Mofford, has succeeded to the office of Governor, she holds such office only temporarily until the Governor's successor is elected. In this case, the recall election is merely a special midterm election which would fill the vacancy created by Evan Mecham's removal from office.

Arizona's recall provision is for benefit of the public rather than the officials, and thus its language should be construed liberally in favor of permitting recall elections. *Johnson v. Maehling*, 123 Ariz. 15, 18, 597 P.2d 1, 4 (1979). As the Washington court recently stated, "the rights of initiative, referendum, and recall form a weighty triumvirate intended to preserve the people's most basic right of self-governance and any interference with these rights requires strong justification." *Pederson v. Moser*, 99 Wash.2d 456, 460, 662 P.2d 866, 869 (1983). I agree.

The majority opinion states: "There [is] no purpose to be served by the recall election." This "finding" by the majority is not a justification for this court to deviate from the clear mandate of our Constitution. Once the recall process has properly begun, this court has no power to stop such election regardless of whether we believe "no purpose will be served" by such an election. The recall provision in our constitution is intended as a reservation in the

people of the power to recall any official without judicial interference. *See Groditsky v. Pinckney,* 661 P.2d 279, 282 (Colo. 1983). The people should have the opportunity to select a new Governor as provided for by the recall provisions in the Arizona Constitution. I, therefore, respectfully dissent.