859 P.2d 1341

**Kenneth SMALLEY and Libertarian Party, Plaintiffs/Appellees,**

v.

**Kathleen S. DETRICK, City Clerk, and City of Tucson, a municipal corporation, Defendants/Appellants.**

**Jim MABRY and Libertarian Party, Plaintiffs/Appellees,**

v.

**Kathleen S. DETRICK, City Clerk, and City of Tucson, a municipal corporation, Defendants/Appellants.**

Nos. 2 CA–CV 93–0161, 2 CA–CV 93–0169.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 21, 1993.

---

Peter G. Schmerl, Tucson, for plaintiffs/appellees.

Frederick S. Dean, Tucson City Atty. by Dennis P. McLaughlin, Tucson, for defendants/appellants.

## OPINION

LIVERMORE, Presiding Judge.

The election statutes provide that nominating petitions for city offices for districts within a city shall be signed by registered members of the same party "equal to at least five per cent and not more than ten per cent of the designated party vote in the ward, precinct or other district." A.R.S. § 16–322(A)(8). Under § 16–322(B), "the basis of percentage shall be the vote of the party for mayor" at the last mayoral election. We are required in this case to determine whether "designated party vote" refers to the number of party members voting in an election or the number of votes cast for a party's candidate. The trial courts in these consolidated actions chose the former definition. We agree and affirm.

In the ordinary operation of our two-party system, the deviation between the two calculations would not be great. This case arises because of the success of the Libertarian candidate for mayor in the 1991 Tucson election. In Ward 6 for example, she received 2,060 votes although there were only 275 registered Libertarian voters. The city, as it has historically done, calculated the "designated party vote" by using the vote for the mayoral candidate within the ward and thus concluded that nominating petitions for city council in 1993 needed to be signed by five per cent of that number or 103. The Libertarian candidate, therefore, had to have his petitions signed by 37½ per cent of the registered Libertarian voters in the ward. The figure for Republican and Democratic candidates was 1.5 per cent.

Standing alone, "designated party vote" could be defined in either way—by reference to party members voting or by reference to votes cast for party candidates. Ordinarily, as we observed, either definition leads to much the same result. When results as dramatically disparate as those here occur depending on the definition chosen, and thus a choice between the two must be made, we should start with the purpose of the requirement. *State v. Korzep,* 165 Ariz. 490, 799 P.2d 831 (1990). As put in *Board of Supervisors of Maricopa County v. Superior Court,* 4 Ariz.App. 110, 113, 417 P.2d 744, 747 (1966), it is that the candidate "go to the members of a political sector to which he feels he belongs and seek their permission, via the nomination paper, to the placing of his name upon the primary ballot, regardless of how few people comprise this political sector, and how few signatures are needed on the nomination paper." If that truly is the purpose, then a definition should be chosen that applies uniformly regardless of the identity or size of the group to which a potential nominee must appeal. It makes no sense to say that a Democrat must be supported by 1½ per cent of the registered Democrats but a Libertarian must be supported by 37½ per cent of the registered Libertarians. The price of electoral success through appeal to voters outside the party ought not to be an increase in the burden of running within the party.

The city seeks to avoid this result by pointing to the fact that the city has calculated petition requirements on the basis of votes cast for a party's candidate for at least fifty years, that the state acted similarly until there was an express amendment to § 16–322 to mandate a percentage

of registered voters, and that the court in *Board of Supervisors, supra,* made the same assumption about how the term should be defined. Taking these arguments in order, while historical interpretation is entitled to some weight, it cannot be taken as resolving an issue never raised. *Wade v. Greenlee County,* 173 Ariz. 462, 844 P.2d 629 (App.1992). Similarly, changing for state offices the basis from those voting to those registered cannot resolve the question whether "those voting" meant those from the party voting or those voting for the party's candidates. Finally, the court assumed in *Board of Supervisors, supra,* that a non-partisan candidate would have to receive signatures of a percentage of the number who cast votes for a non-partisan gubernatorial candidate in the last election. That assumption was made in the context of answering whether a non-partisan candidate had to use nominating petitions to get on the ballot. The question we answer was not presented for decision.[1]

The judgment is affirmed. Appellees' request for attorneys' fees is denied.

LACAGNINA and FERNANDEZ, JJ., concur.

---

1. Our construction of the statute makes it unnecessary to reach the argument that the city's interpretation of the statute would render it unconstitutional. See *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Lightfoot v. Eu,* 964 F.2d 865 (9th Cir.1992); *Consumer Party v. Davis,* 778 F.2d 140 (3d Cir.1985).

Statutes should be construed to avoid raising serious constitutional questions. *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *Greyhound Parks of Arizona, Inc. v. Waitman,* 105 Ariz. 374, 464 P.2d 966 (1970).