[No. 49313-8.   En Banc.   April 28, 1983.]

ROGER E. PEDERSON, *Appellant,* v. C. THOMAS MOSER, ET AL, *Respondents.*

*Kennedy, Rice, Brewe & Tangen,* by *Kenneth B. Rice,* for appellant.

*C. Thomas Moser, Prosecuting Attorney,* for respondents.

*Patrick M. Hayden,* for respondent Reitsma.

UTTER, J.—This was an action on several grounds to permanently enjoin or, in the alternative, stay a recall election.

The trial court dismissed the action and appellant Roger E. Pederson sought review. We granted accelerated review so that the appeal could be heard before the date the election was scheduled to be held—March 8, 1983. After oral argument on February 28, we issued an order affirming the trial court's dismissal, with opinion to follow.

Respondent Richard C. Reitsma has filed several demands for the recall of Pederson, who is a port commissioner for the Port of Skagit County. The original Demand for Recall was filed on November 24, 1982. No action was taken on it, however, for on November 30 Reitsma filed an Amended Demand for Recall which corrected an erroneous date. On December 2, the county prosecutor, respondent C. Thomas Moser, found four of the five paragraphs of the Amended Demand for Recall to be legally sufficient.

On December 12, Pederson commenced this action, asserting among other claims that he had not been properly served with the Amended Demand for Recall as required by RCW 29.82.015. After concluding that this claim might well be meritorious, Reitsma filed a Second Amended Demand for Recall on December 14, which he served on Pederson that evening. The Second Amended Demand for Recall was identical to the Amended Demand for Recall except that it omitted the paragraph which the prosecutor had found legally insufficient and another paragraph which Reitsma had discovered might be factually in error. The three remaining paragraphs charged failure to satisfy residency requirements and two violations of the Open Public Meetings Act of 1971 (RCW 42.30). The alleged nonresidency is an issue which has existed for some time and was widely debated during Pederson's successful reelection campaign in 1977.

By letter dated December 20, Reitsma informed county officials that he wished to proceed only on the last recall demand. Early on the morning of January 3, 1983, 20 days after Pederson had been served, the prosecutor issued a ballot synopsis as required by RCW 29.82.020 and Reitsma began to collect petition signatures.

On January 7, Reitsma filed 8,278 signatures with the county auditor, respondent Luella Henry. This was the deadline for filing under RCW 29.82.025, which requires that all recall petitions be filed at least 10 months before the officer being recalled is up for reelection. The auditor began canvassing the petitions (*i.e.,* validating the signatures) on January 14 and stopped on January 20 after canvassing only 5,790 of the signatures, 5,186 of which were found to be valid. Since only 3,770 signatures were necessary, the auditor then set a recall election for March 8, 1983.

During all of these events, a quo warranto action to remove Pederson from office due to his alleged nonresidency was pending, though it has now presumably been dismissed due to the success of the recall election. The quo warranto action was based on the same facts regarding nonresidency as the first paragraph of the Second Amended Demand for Recall.

I

Initially it should be noted that we have the power to enjoin a recall election if proper procedures are not followed. *See Gibson v. Campbell,* 136 Wash. 467, 471, 241 P. 21 (1925). In addition, we may stay an election until some appropriate future date. *See Janovich v. Herron,* 91 Wn.2d 767, 780, 592 P.2d 1096 (1979). Thus, we have the power to provide the relief requested by Pederson had we found his claims meritorious.

The most tenable of Pederson's arguments is that the auditor failed to comply with the requirement of RCW 29.82.090 that the canvassing officer "shall . . . canvass and count the names of certified legal voters on such petitions." This necessarily implies that *all* signatures must be canvassed. Since a complete count was not made here, and an election date is to be fixed only "at the conclusion of the canvass and count" (RCW 29.82.100), Pederson argues that the auditor had no authority to set an election date.

Yet the mandatory wording of RCW 29.82.090 is

not dispositive. Where the recall statute declares that things shall be done in a particular time and manner, the procedures will be regarded as mandatory only if they affect the actual merits of the election. *McCormick v. Okanogan Cy.*, 90 Wn.2d 71, 76, 578 P.2d 1303 (1978). The auditor thus had a duty to canvass *all* signatures only if it might have some practical effect.

Pederson argues that there was such an effect here. In particular, he points out that RCW 29.82.090 requires that the auditor reject all signatures, including the first, of any person who signs more than one petition. In the present case, application of this rule could reduce the total number of valid signatures to less than the minimum required, if each of the uncanvassed signatures duplicated one already canvassed.

We hold, however, that RCW 29.82.090 is unconstitutional to the extent that it precludes the auditor from not counting even one duplicate signature. In *Sudduth v. Chapman,* 88 Wn.2d 247, 558 P.2d 806, 559 P.2d 1351 (1977), we held a similar provision governing referenda (*see* former RCW 29.79.200)[1] violative of the constitutional right of referendum. *Sudduth,* at 251. We noted that the people's constitutional reservation of the right of referendum was to be liberally construed and that the rejection of *all* duplicate signatures frustrated, rather than fulfilled, the right. *Sudduth,* at 251.

The reasoning in *Sudduth* applies equally to RCW 29.82.090. As with the right of referendum, our constitution establishes a very broad right of the electorate to recall elective public officials. *McCormick v. Okanogan Cy., supra* at 75. The rights of initiative, referendum, and recall form a weighty triumvirate intended to preserve the people's most basic right of self–governance and any interference with these rights requires strong justification. Just as we did in *Sudduth,* we find such justification lacking here.

---

[1]The offending provision was eliminated from the referendum statute just last year. *See* Laws of 1982, ch. 116, § 15.

The fact that the constitutional right of recall, unlike the right of referendum, is generally not self–executing (*compare* Const. art. 2, § 1(d) *with Roberts v. Millikin,* 200 Wash. 60, 73, 93 P.2d 393 (1939) *and* Const. art. 1, §§ 33, 34) is not relevant in the present case. All constitutional provisions are self–executing to the extent that they void all action taken in violation of them and preclude enforcement of any statute violating them. 1 T. Cooley, *Constitutional Limitations* 171 (8th ed. 1927); 16 Am. Jur. 2d *Constitutional Law* § 140, at 512 (1979). Const. art. 1, §§ 33, 34 explicitly set the "percentages of the qualified electors" which require a recall election. The complete exclusion of a particular elector's signature simply because he or she signed more than once affirmatively violates these provisions.

Since RCW 29.82.090's exclusion of *all* duplicate signatures is invalid, the auditor's failure to canvass all signatures after having already counted the minimum necessary to hold a recall election was of no practical import. The canvassing of the remaining signatures was thus not mandatory and hence not a prerequisite to fixing an election date.

## II

Pederson also raises several other claims. We find these of even less merit than the first, however.

## A

The first of these alternative claims is that Reitsma should not have been allowed to file amended recall demands. Pederson rightly points out that RCW 29.82 nowhere provides for multiple or amended recall demands and argues that they are therefore not permitted.

■ On the other hand, nothing in RCW 29.82 *prohibits* filing multiple or successive recall demands, either. Indeed, RCW 29.82.010 permits "any legal voter" to demand recall "*[w]henever* [he or she] shall desire", the only express limitation being that no such demand may be filed within 10 months of regular election (RCW 29.82.025). (Italics ours.)

Moreover, the recall statute is to be construed in favor of the voter, not the elected official. *See McCormick v. Okanogan Cy., supra* at 78. While we are inclined to imply into the statute a requirement that a voter choose between or consolidate multiple recall demands, Reitsma did so here. We must therefore reject Pederson's claim.

B

Pederson also contends that the county prosecutor issued the ballot synopsis[2] prematurely. RCW 29.82.015 requires that service of a recall demand on the official whose recall is demanded must precede preparation of the ballot synopsis by not less than 20 days. If fractions of days are not ignored, less than 20 days passed in the present case between service of the recall demand and filing of the ballot synopsis, since service was in the late evening of December 14, 1982, and the ballot synopsis was filed on the morning of January 3, 1983. If fractions of days are ignored, on the other hand, exactly 20 days passed.

Pederson argues that, where justice demands, fractions of a day will be taken into account in computing the passage of time. *See* 74 Am. Jur. 2d *Time* § 13, at 596 (1974). This is an exception to a general contrary rule, however. *See* 74 Am. Jur. 2d *Time* § 13, at 595 (1974); *see also Longview Co. v. Lynn,* 6 Wn.2d 507, 527, 108 P.2d 365 (1940). The method of time computation is provided for in the state by court rule.

> In computing any period of time prescribed or allowed by these rules, by the local rules of any superior court, by order of court, *or by any applicable statute,* the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, . . .

(Italics ours.) CR 6(a). RCW 29.82.015 is well within the purview of this rule, since it provides that service of the

---

[2]The ballot synopsis is a concise statement of the charges made in the recall demand which must be prepared by the prosecutor and be designated on all petitions and ballots and in all related proceedings. *See* RCW 29.82.020.

recall demand is to be identical to that for commencement of a civil action in superior court. We hold that fractions of days were properly ignored in the present case.

■ Even if the 20-day waiting period established by RCW 29.82.015 was not complied with, an injunction or stay should have issued only if some harm was demonstrated. *Cf. Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 364, 617 P.2d 704 (1980) (failure to comply with time limits of CR 6(d) excused absent showing of prejudice); *McCormick v. Okanogan Cy., supra* at 75–76 and cases cited therein (election will not be set aside for irregularity not affecting result). No such harm has been shown here. Moreover, Pederson must have been aware of the pending charges for well over 20 days prior to filing of the ballot synopsis, since he filed this action on December 12, 1982. This also is sufficient to excuse any technical noncompliance with the statutory time requirements. *Cf. Loveless v. Yantis*, 82 Wn.2d 754, 759, 513 P.2d 1023 (1973) (where parties have had actual notice and sufficient time to prepare, motion may be heard despite failure to comply with time limits of CR 6(d)).

C

■ Pederson also argues that his reelection in 1977 after open airing of nonresidency allegations bars recall based on identical charges. There is a split of authority in other jurisdictions on the question of whether recall can be premised on misconduct during a prior term in office. *Janovich v. Herron*, 91 Wn.2d 767, 775, 592 P.2d 1096 (1979) and cases cited therein. In *Janovich,* we followed the line of cases permitting recall and distinguished the contrary cases on three grounds: (1) The rationale that reelection indicated condonation of the conduct was inapplicable because the conduct was not public knowledge at the time of reelection; (2) Many of the contrary cases involve removal by judicial or administrative process rather than by the voters; and (3) Many other courts take the view, rejected in this state, that recall is analogous to penal sanc-

tions. *Janovich,* at 775–76.

Pederson suggests that *Janovich* can, and should, be limited to cases where the prior misconduct was not public knowledge at the time of reelection. The holding of *Janovich,* however, was not so limited.

> We hold that the constitutional and statutory provisions here at issue, recognizing in the people a broad right to recall their elected officials, contemplate that officials may be recalled for misconduct during a prior term of office.

*Janovich,* at 776. To draw the line urged by Pederson would regularly enmesh the courts in factual linedrawing as to just what constitutes "public knowledge" of prior misconduct. In other contexts we have studiously avoided such involvement (*see, e.g., State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 124, 492 P.2d 536 (1972) and cases cited therein) and we do so here. Recall may be based on misconduct in a prior term of office whether or not the misconduct is public knowledge at the time of reelection.

### D

Pederson also challenges the sufficiency of the alleged Open Public Meetings Act of 1971 violations to support a recall demand; however, he cites no authority to support his challenge. He appears to concede that such violations constitute grounds for recall (*see Bocek v. Bayley,* 81 Wn.2d 831, 837, 505 P.2d 814 (1973)) but contends that there is no proof that the violations occurred and that any acts taken were upon advice of counsel and in good faith.

These, however, are questions of fact which are not for us to judge. We have consistently held that we will not inquire into the truth of recall charges but will consider only their legal sufficiency. *See, e.g., Janovich v. Herron, supra* at 773. While change in this rule has been suggested, such change is for the Legislature or the people. *See, e.g., Bocek v. Bayley, supra* at 839–40 (Utter, J., concurring); Cohen, *Recall in Washington: A Time for Reform,* 50

Wash. L. Rev. 29 (1974). Absent some contrary direction from these quarters, we adhere to our established rule.

### E

■ Finally, Pederson argues that the recall election should have been stayed until resolution of the quo warranto action involving one of the same charges made in the recall demand. We have issued such a stay where the interest of justice required. *See Janovich v. Herron, supra* at 779–80. In *Janovich,* we noted several factors militating in favor of issuance of a stay. First, resolution of the action against the elected official would automatically oust him from office and hence render the recall election moot. *Janovich,* at 779. Second, the official had been removed from active conduct of the affairs of office. *Janovich,* at 779. Third, a gag order placed on all trial participants and the self–incrimination problems posed because the trial was for a criminal offense made it very difficult for the official to effectively campaign. *Janovich,* at 776–78, 780. Finally, trial was projected to last 3 months and to take place in San Francisco, 800 miles from Tacoma, where the election was to take place, thus making it virtually impossible for the official to both campaign and be present at trial. *Janovich,* at 779.

The circumstances of *Janovich* were well nigh unique and fit within what we conceive as a narrow exception to the general principle that we are loathe to interfere with the recall process. *See generally McCormick v. Okanogan Cy., supra* at 75–76. The facts of the present case differed significantly from those of *Janovich.* It is true that resolution of the quo warranto action against Pederson would have rendered the recall election moot, since such an action removes the defendant official from office (*see* RCW 7.56-.100). In contrast to the official in *Janovich,* however, Pederson continued to perform official duties. Moreover, the disabilities present in *Janovich* were not present here. The quo warranto action and recall election were in the same county with the election scheduled to take place more

than a month prior to trial. Secondly, though Pederson points to supposed conflicts between simultaneously fighting identical charges in a campaign and in a civil action, the special problems of gag orders and self–incrimination were certainly not present.

We thus find the instant case distinguishable from *Janovich* and its facts insufficient to satisfy the stringent conditions necessary to stay a recall election.

Failing to find merit in any of appellant Pederson's contentions, we denied his motion to enjoin or, in the alternative, stay the recall election. That denial having previously issued, we reaffirm it herein.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.