[No. 85460-2.    En Banc.]

Considered March 2, 2011.    Decided May 12, 2011.

*In the Matter of the Recall of* DALE WASHAM, *Pierce County Assessor-Treasurer, Appellant.*

504

*Shawn T. Newman*, for appellant.

*Thomas H. Oldfield* and *Jeffrey P. Helsdon* (of *Oldfield & Helsdon PLLC*), for respondent Robin Farris.

¶1 CHAMBERS, J. — Robin Farris filed six recall charges against Pierce County Assessor-Treasurer Dale Washam. She charges that Washam violated whistleblower protections, retaliated against his employees, grossly wasted public funds, failed to cooperate with discrimination and retaliation investigations, and violated his oath of office. Judge Felnagle found five of the charges sufficient. Washam appealed, and on March 3, 2011, we entered a brief order affirming Judge Felnagle's decision authorizing the recall effort to proceed. We now take this opportunity to set forth the reasons for our order.

## FACTS

¶2 Washam is no stranger to the recall process. In 2005, he filed a recall petition against his predecessor in office, Ken Madsen. After Washam was elected Pierce County assessor-treasurer in 2008, he continued to doggedly pursue his predecessor. In his first few months in office, he asked the Pierce County prosecutor, the state auditor, and the state attorney general to investigate, file charges, or take other action against his predecessor in office for relying in part on statistical modeling. All declined.

¶3 Meanwhile, tensions between Washam and assessor-treasurer staff grew quickly. It appears Washam was incensed at the staff for not performing physical inspections under his predecessor. According to investigator Diane Hess Taylor, "[Washam] accused [employees] of fraud and not having integrity. He chastised employees for not quitting their jobs or blowing the whistle on then [Assessor-Treasurer] Ken Madsen." Clerk's Papers (CP) at 28. Washam seemed particularly focused on one of the managers, Sally Barnes. The record suggests Washam blamed her for providing evidence in support of Madsen that prevented

Washam's recall attempt of Madsen from going forward. Barnes filed an official equal employment opportunity complaint alleging discrimination and retaliation. The investigator noted that "[w]itness accounts were consistent that Barnes was singled out for negative treatment and ostracized by Washam by late February [2009]. There was so much tension surrounding Barnes that several employees said they were afraid to be seen with her." CP at 32. Washam reassigned Barnes from a supervisory and management role to a far inferior special project. Other employees filed their own equal employment opportunity complaints against Washam. Another independent investigator found that Washam had violated various Pierce County Code provisions protecting the confidentiality of people filing complaints, had retaliated against employees for protected conduct, and had identified and posted derogatory information about the complaining employees. An investigator found that Washam's "dogged unwillingness" to stop pursuing his predecessor and office staff resulted "in a gross waste of public funds." CP at 99-100. Staff complaints against Washam have resulted in at least three outside investigations of Washam, all finding misconduct.

¶4 On October 29, 2010, Farris, acting pro se, filed six charges with the Pierce County Auditor's Office. She included copies of the three investigators' reports as the basis of her allegations. While she signed the charges, she did not sign under oath as required by the statute. RCW 29A.56.110. The auditor arranged for Washam to be served with the recall charges and referred the matter to the Pierce County Prosecutor's Office. That office formulated a ballot synopsis, arranged for Washam to be served with charges, and petitioned the superior court to review the adequacy of the charges on November 12, 2010. RCW 29A.56.120.[1] Five days later, Farris, by then assisted by pro

---

[1] Washam spends considerable time in his statement of the facts in his brief complaining that he was not properly served. *E.g.*, Opening Br. at 6-8. However, he has assigned no error to the service and seemingly proper declarations of service appear in the file.

bono counsel, filed an amended request that contained a proper verification under RCW 29A.56.110 and corrected a few typographical errors. She did not attach, and the auditor did not serve, the three investigators' reports a second time.

¶5 The original hearing to determine the sufficiency of the charges was set for November 22, 2010. Verbatim Report of Proceeding (VRP) (Nov. 22, 2010). Washam, acting pro se at the time, requested dismissal based on the alleged failure to serve the recall petition and other alleged process defects, which was denied, and for more time, which was granted. At the second hearing, December 16, 2010, the trial judge found five of the six charges sufficient. He struck charge four, which alleged Washam "used profane, questionable, negative or angry language and gestures [and] continued to reference religion." CP at 13, 548. Judge Felnagle corrected the ballot synopsis by striking that charge and by inserting dates. It now reads:

> The charge that Dale Washam, as Pierce County Assessor-Treasurer, committed misfeasance in office, malfeasance in office and/or violated his oath of office alleges that he violated state and local law by (1) retaliating against an employee for filing a complaint against him between January 22, 2009 and March 16, 2010, (2) grossly wasting public funds in pursuing criminal charges against his predecessor as Assessor-Treasurer from January 2, 2009 until October 29, 2010, (3) failing to protect the employee from retaliation, false accusations or future improper treatment between January 22, 2009 and March 16, 2010, and by failing thereafter to rectify his retaliatory actions against his employee, (4) refusing to participate in investigations of whether he had discriminated and retaliated against his employees between January 22, 2009 and March 16, 2010, and (5) discharging his duties in an unlawful and biased manner from January 2, 2009 until October 29, 2010.
>
> Should Dale Washam be recalled from office based on this charge?

CP at 549. Washam appealed. By order, we affirmed the trial court's ruling with this opinion to follow.

## ANALYSIS

¶6 Elected officials in Washington may be recalled for malfeasance, misfeasance, and violation of oath of office. Const. art. I, §§ 33-34; RCW 29A.56.110. Courts act as a gateway to ensure that only charges that are factually and legally sufficient are placed before the voters, but we do not evaluate the truthfulness of those charges. RCW 29A.56.140; *In re Recall of Kast*, 144 Wn.2d 807, 813, 815, 31 P.3d 677 (2001).

¶7 Recall statutes are construed in favor of the voter. *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 765, 10 P.3d 1034 (2000) (citing *Pederson v. Moser*, 99 Wn.2d 456, 462, 662 P.2d 866 (1983)). As Justice Utter put it, "[T]he mandatory wording of [the recall statute] is not dispositive. Where the recall statute declares that things shall be done in a particular time and manner, the procedures will be regarded as mandatory only if they affect the actual merits of the election." *Pederson*, 99 Wn.2d at 459-60. Thus,

> [t]echnical violations of the governing statutes are not fatal, so long as the charges, read as a whole, give the elected official enough information to respond to the charges and the voters enough information to evaluate them. Notwithstanding the petitioner's duty to plead with specificity, we will not strike recall efforts on merely technical grounds.

*In re Recall of West*, 155 Wn.2d 659, 663, 121 P.3d 1190 (2005) (citation omitted).

### A. Procedural Challenges

¶8 Washam contends, correctly, that there is no statutory authority that allows recall charges to be amended. Since, he believes, the original filing was fatally flawed, he asks that we dismiss the recall effort. However, as the trial judge noted, most court filings can be amended. VRP (Nov. 22, 2010) at 9; *see, e.g.*, CR 15(a) ("[A] party may amend the party's pleading only by leave of court . . . and

leave shall be freely given when justice so requires."). We are required to construe the law in favor of the voter, and nothing in the recall petition act bars a trial judge from allowing amendment of charges. While there may be some limitations on the extent of proper amendment, in this case, the trial court allowed minor, technical amendments that did not go to the substance of the charges.[2] We find no error.

¶9 In her original filing, Farris signed the charges and "certif[ied] to the best of my knowledge that these charges are true." CP at 16. She did not verify the charges as required by the statute. RCW 29A.56.110.[3] Washam has contended from the beginning that Farris's initial failure to properly verify the charges is "flawed to the degree where it's non-redeemable." VRP (Nov. 22, 2010) at 8. We take his specific arguments in turn.

¶10 First, Washam contends that the amended request is inadequate because it did not include the attachments. But nothing in the statutory scheme requires petitioners to have the attachments verified or that amended charges be re-served with the attachments, and Washam provides no authority that would create such a requirement. Judge Felnagle specifically asked Washam, "Are you . . . able to identify any prejudice to you if I allow the amendment . . . ?" Washam could identify nothing but his deep respect for every statutory detail of the recall process itself. *Id.* at 10-11, 13-14. Imposing such a requirement

---

[2] We note that the amended requests differ from the initial charges in at least four ways. The amended charges contain a proper verification under oath, it corrects the date Washam took office, it corrects a citation, and it does not include the original attachments. Washam complains that the trial judge improperly treated the amended request to be an amended petition. Given that we agree with the trial judge that it should be treated as an amendment to the original charges, we need not reach this argument.

[3]
  The charge shall state the act or acts complained of in concise language, give a detailed description including the approximate date, location, and nature of each act complained of, be signed by the person or persons making the charge, give their respective post office addresses, *and be verified under oath that the person or persons believe the charge or charges to be true and have knowledge of the alleged facts upon which the stated grounds for recall are based.*

RCW 29A.56.110 (emphasis added).

would violate the principle that we will not strike recall efforts on technical grounds, and we decline to do so. *See Pederson*, 99 Wn.2d at 460.

¶11 Second, Washam contends that the initial lack of verification deprived the superior court of jurisdiction. Opening Br. at 15-16 (citing *Herron v. McClanahan*, 28 Wn. App. 552, 562, 625 P.2d 707 (1981)). We disagree. *Herron* was another Pierce County recall case, and some of the citizen's arguments were dismissed by the Court of Appeals for want of jurisdiction. *Herron*, 28 Wn. App. at 554. But in *Herron*, the citizen did not timely appeal a finding that several of his charges were insufficient. After the time for review had lapsed, the citizen sought to resurrect the charges in an action for an extraordinary writ. *Id.* at 555, 562. The trial court found it lacked jurisdiction to consider whether the charges were sufficient *under a writ* because there was an adequate remedy at law—the separate, direct review mandated by statute. *Id.* at 562. Nothing in *Herron* speaks to the jurisdiction of the trial court reviewing the recall petition; it simply followed the well established principle that a writ will not lie when there is an adequate remedy at law. *E.g., State ex rel. Townsend Gas & Elec. Light Co. v. Superior Court*, 20 Wash. 502, 506-07, 55 P. 933 (1899).

¶12 Third, Washam argues that the auditor should not have referred the charges to the prosecutor and the prosecutor should have rejected the charges. He contends the error here is similar to the error in *In re Recall of Wasson*, 149 Wn.2d 787, 72 P.3d 170 (2003). Opening Br. at 17-19. *Wasson* considered a recall petition filed by Eduardo Pina against the mayor and three members of the Des Moines City Council for allegedly violating the Open Public Meetings Act of 1971, chapter 42.30 RCW, by going into closed session, among other things. *Wasson*, 149 Wn.2d at 789. The prosecuting attorney originally rejected the charges because they did not, contrary to the statute, provide a concise statement of the allegations. *Id.* at 792 (citing former RCW 29.82.010 (1984)). At that point, Pina's

attorney "sent a letter to the prosecutor containing revised recall charges with additional facts." *Id.* We noted that "the petitioner did not sign the letter, affirm or adopt the revised charges, or verify under oath that he believed the revised charges to be true as required by the statute," and we held that "[t]he prosecutor should have rejected the additional information because it did not remedy the original deficiencies *and Pina did not file an amended petition.*" *Id.* at 792-93 (emphasis added).

¶13 But here, the amendment was timely and the amended charges did remedy the original deficiency (the failure to properly certify under oath), and none of the flaws present in *Wasson* are present here. Farris provided concise statements of the charges and the attachments contained all the information (specifically, the dates) the trial judge deemed necessary to correct the ballot synopsis. Washam has not shown that the auditor or prosecutor erred in forwarding the charges to the court. We find no error on the part of the auditor or prosecutor.

¶14 Washam challenges the trial court's failure to determine the adequacy of the charges within 15 days of receiving the petition, as required by RCW 29A.56.140. We note that the trial judge set a hearing on the ninth day after receiving the petition, which would have allowed him to meet the statutory requirement, but that Washam himself asked for more time. This is what took the court out of the 15-day window. Again, "procedures will be regarded as mandatory only if they affect the actual merits of the election." *Pederson*, 99 Wn.2d at 460. Granting Washam more time to review the charges does not go to the actual merits of the election and is not ground to vacate the recall.

¶15 Although the trial judge does not have the authority to change the charges, the judge has the power to "correct any ballot synopsis it deems inadequate." RCW 29A.56.140; *West*, 155 Wn.2d at 668 (Madsen, J., concurring). Judge Felnagle looked to the attached information to find approximate dates for several of the charges. Washam contends Judge Felnagle overstepped his authority in two

ways. First, Washam contends that it was inappropriate for the trial judge to look to the attached information because it was not attached to a verified statement of charges. Given that we find that the trial judge properly allowed the charges to be amended, we find no error. Second, Washam complains that the judge overstepped his bounds by scrutinizing the attachments and inserting approximate dates into charges 2-6. Opening Br. at 27 (citing VRP (Dec. 16, 2010) at 44). He claims that this was an inappropriate attempt to amend the charges by correcting the ballot synopsis. But we have previously found that the trial judge may consult the attached materials for such information, so long as the gist of the charge remains the same. *West*, 155 Wn.2d at 664-65; *In re Recall of Lee*, 122 Wn.2d 613, 618, 859 P.2d 1244 (1993).

## B. SUFFICIENCY CHALLENGES

¶16 Charges are factually sufficient if "taken as a whole they . . . state sufficient facts to identify to the electors and to the official being recalled acts or failures to act which without justification would constitute a prima facie showing" of misfeasance, malfeasance, or violation of oath of office. *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984).[4] "Voters may draw reasonable inferences from the facts; the fact that conclusions have been drawn by the petitioner is not fatal to the sufficiency of the allegations." *West*, 155 Wn.2d at 665. To be legally sufficient, the charges "must specifically allege substantial conduct" amounting to misfeasance, malfeasance, or violation of the

---

[4] For the purposes of this chapter:

(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;

(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and

(b) Additionally, "malfeasance" in office means the commission of an unlawful act;

(2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110.

oath of office. *Id.* at 667 (citing *Kast*, 144 Wn.2d at 815). The legal sufficiency requirement protects officials from being "recalled for appropriately exercising the discretion granted him or her by law." *Chandler*, 103 Wn.2d at 274. "Officials may not be recalled for their discretionary acts absent manifest abuse of discretion." *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 264, 961 P.2d 343 (1998) (citing *In re Recall of Sandhaus*, 134 Wn.2d 662, 670, 953 P.2d 82 (1998)). When an official is charged with violating the law, there must be evidence presented that leads to the conclusion that the public official intended to commit an unlawful act. *Id.* at 263 (citing *Sandhaus*, 134 Wn.2d at 668). Even if the charge is legally sufficient as pleaded, if an elected official can show "a legally cognizable justification . . . that justification renders a recall petition legally insufficient." *Greco v. Parsons*, 105 Wn.2d 669, 671, 717 P.2d 1368 (1986) (holding that auditor could not be recalled for failing to implement ordinance requiring precinct boundaries to be withdrawn when the county failed to allocate sufficient time or money to make it so).

¶17 We review legal questions de novo, but "[w]e do not consider claims insufficiently argued by the parties." *State v. Ford*, 137 Wn.2d 472, 477 n.1, 973 P.2d 452 (1999) (citing *State v. Elliott*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990)). We construe the statute in favor of the voter. *See West*, 155 Wn.2d at 663 (citing *Kast*, 144 Wn.2d at 813).

¶18 Washam brings general challenges to the factual sufficiency of all the charges on the theory that since the attachments were not verified, the court should not rely upon them. Since we find the amendment was proper, the trial court could consider the three investigative reports Farris filed with her charges. Thus his general challenge to the factual sufficiency of the charges is unavailing.[5] We turn to his challenges to legal sufficiency.

---

[5] Washam also contends that the charges were not concise. As he devotes no substantial argument to the claim, we do not reach it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

¶19 <u>Charge 1.</u> Farris charged that "Mr. Washam violated the Pierce County Code 3.14.030(C) Reporting Improper Government Action – Employee Protection, Pierce County Code 3.14.030(D) Retaliatory Action Prohibited, and Pierce County Code 3.14.030(E) Confidentiality of a Person Filing a Complaint." CP at 195. This charge arose from alleged retaliation against Sally Barnes. An investigator hired by the county found such retaliation. Such retaliation specifically violates Pierce County Code (PCC) 3.14.030.[6] Judge Felnagle summarized the charge as "retaliating against an employee for filing a complaint against him between January 22, 2009 and March 16, 2010."[7] CP at 549.

¶20 Washam contends that he had "a legally cognizable justification for discretionary personnel decisions," Opening Br. at 30, but he does not further elaborate what that cognizable justification might have been. While our review is de novo, mere invocation of a legally cognizable justification is not enough. We need a more substan-

---

[6]

D. Retaliatory Action Prohibited. It is unlawful for any County official or employee to take retaliatory action against an employee because he or she (or another acting pursuant to his or her request):

    1. Provided information in good faith in accordance with the provisions of this Chapter that an improper governmental action occurred; or

    2. Cooperated in a lawful investigation related to improper governmental action; or

    3. Testified in a proceeding or prosecution arising out of a complaint of improper governmental action.

E. The identity of any person filing a complaint under this Chapter shall be treated as confidential to the extent possible under law unless the employee authorizes the disclosure of his or her identity in writing.

F. No County officer or employee shall use his or her official authority or influence, directly or indirectly, to threaten, intimidate or coerce an employee for the purpose of interfering with that employee's right to disclose information concerning an improper governmental action in accordance with the provisions of this Chapter.

G. Penalty. Any County officer, or employee who shall engage in retaliatory action is subject to discipline up to and including suspension without pay, demotion, or discharge in addition to any penalties which might [be] imposed by an administrative law judge pursuant to state law.

PCC 3.14.030.

[7] Washam does not contend, and thus we do not consider, that violation of county ordinances is not a recallable offense.

tial statement of the alleged justifications before we can weigh whether they are cognizable or lawful. This charge is legally sufficient.

¶21 <u>Charge 2.</u> Farris charged "Gross Waste of Public Funds as defined in RCW 42.40.020(5)."[8] CP at 196. She pointed to the use of "hundreds of thousands of dollars pursuing criminal charges for his predecessor's use of statistical valuation rather than the physical inspections required by law" and briefly outlined the history of Washam's attempt to pursue his predecessors. CP at 196-97. This charge was summarized by the trial court as "grossly wasting public funds in pursuing criminal charges against his predecessor as Assessor-Treasurer from January 2, 2009 until October 29, 2010." CP at 549.

¶22 It is, as Farris concedes, entirely proper for elected officials to examine the lawfulness of their predecessors' (or contemporaries') actions. It may even be laudable. In the general course of events, it is not a recallable offense. In many cases it may be appropriate for an official to pursue mandamus or other legal issue against the advice of counsel. Only if such an activity can be properly characterized as "gross waste of public funds" does it satisfy the legal sufficiency requirement. A trial judge found that the predecessor's actions were legally justifiable because he had been given insufficient funds to perform a physical inspection, and yet Washam spent an enormous amount of his office's time, and the time of the state auditor, attorney general, and the Pierce County prosecuting attorney, pushing for some sort of sanction. An investigator specifically found that Washam's pursuit of his predecessor was "uses of public funds grossly deviating from what a reasonable person would do." CP at 144.[9]

---

[8] " 'Gross waste of funds' means to spend or use funds or to allow funds to be used without valuable result in a manner grossly deviating from the standard of care or competence that a reasonable person would observe in the same situation." RCW 42.40.020(5).

[9] Perhaps most troubling, Washam told the Pierce County prosecutor, by letter on official stationery, that an investigation of his predecessor was required "upon

¶23 Judge Felnagle struggled with the legal sufficiency of this claim. As he said:

> What about legal sufficiency? There are a couple of questions there. One, was his pursuit of the issues surrounding his predecessor within the realm of his discretion, and/or was it legally cognizable – was it legally something that was within his area of justification? Could he justify it legally, I guess is the best way to say that. And I would say that there's a good argument for it being within his area of discretion and for it being legally justifiable for him to have pursued the issue up to a point, and that point is where you begin to get legal advice and you begin to, arguably, reject or ignore the legal advice.
>
> The next question becomes, was this intention or was it just a question of bad judgment. You know, that's a hard line to draw, but I liken this, when I thought about it, to the novel Moby Dick. And in Moby Dick, Captain Ahab is obsessed with getting the white whale, and he's obsessed with getting the white whale to the extent that he's willing to take down his ship and his crew in the process. And what we see here is an allegation that, when warned about the lack of legal basis, the argument goes that the elected official continues on seeking out his white whale, in this case, his predecessor in office, even to the extent that it's going to jeopardize his crew, in this case, the tax-paying public.

VRP (Dec. 16, 2010) at 35-36. Judge Felnagle concluded that the charge was legally sufficient on the theory that "any elected official is required to be a good steward for the public's money, and to not do so is to not perform your duties in a proper manner and it's not following or discharging the duty required of you as a public, elected official." *Id.* at 36-37. The simple fact is that we "do not consider claims insufficiently argued by the parties." *Ford*, 137 Wn.2d at 477 n.1 (citing *Elliott*, 114 Wn.2d at 15). Washam's arguments in this case are conclusory and unhelpful.

¶24 At some point, appropriate investigation becomes a gross waste of public funds under RCW 42.40.020(5) and a

the directive of the Washington State Attorney General's Office," CP at 78, when no such directive existed.

recallable charge. An investigation specifically found a gross waste of public funds and that Washam misrepresented to the Pierce County prosecutor what the attorney general had told him on the subject. We find this charge of gross waste of public funds is factually and legally sufficient.

¶25 Charge 3. Farris charged that "Mr. Washam violated the Pierce County Code Chapter 3.14.030(C), Improper Governmental Action, by failing to rectify his retaliatory acts and 3.16 Equal Employment Opportunity Policy. 'Under Chapter 3.16, he failed to protect Sally Barnes from retaliation, false accusations, or future improper treatment and has not taken reasonably prompt and effective measures.' " CP at 197. This charge was summarized by the trial court as "failing to protect the employee from retaliation, false accusations or future improper treatment between January 22, 2009 and March 16, 2010, and by failing thereafter to rectify his retaliatory actions against his employee." CP at 549.

¶26 Washam claims that this charge must be struck because he had an unnamed "legally cognizable justification" and lawful intent for his actions. Opening Br. at 31-32. We note that the investigative reports lay out in painstaking detail how Washam violated local whistleblower law, and Washam does not elaborate as to what his legally cognizable justification might have been. *See, e.g.*, CP at 31-35, 52-57 (laying out retaliation in detail); *see also* chs. 3.14, 3.16 PCC (protecting whistleblowers). The facts support an inference of willful intent. This claim is legally sufficient.

¶27 Charge 4.[10] Farris charged that Washam "Violated Pierce County Code 3.16.080(A) — Deliberate non-participation in Discrimination and Retaliation investigation held on August 7, 2009, May 25, 2010, and August 12, 2010, and RCW 42.20.080, Other Violations by Officers." CP

---

[10] The original Charge 4 was dismissed by the trial judge. We take our numbering from the ballot synopsis.

at 198. Farris briefly outlines how all three investigators found Washam had not cooperated. This charge was summarized by the trial court as "refusing to participate in investigations of whether he had discriminated and retaliated against his employees between January 22, 2009 and March 16, 2010." CP at 549.

¶28 Washam was required by law to cooperate with the investigators, and the investigative reports lay out in detail how he failed to do so. *E.g.*, CP at 23-24, 135-37, 146 (investigators detailing lack of cooperation); PCC 3.16.080(A);[11] RCW 42.20.080.[12] While Washam suggests there was a question of intent, the facts presented support an inference that it was unlawful. This charge is legally sufficient.

¶29 Charge 5. Farris charged that "Mr. Washam violated his Oath of Office by knowingly and purposefully violating the RCW 42.20.080 and Pierce County Code 3.14.030(C), 3.14.030(D), 3.14.030(F), 3.15.020(B)(2), 3.16.090 and the intent of the law covered under RCW 42.40.020(5)." CP at 199. She alleged this was a violation of his oath of office to support the laws. This charge was summarized by the trial court as "discharging his duties in an unlawful and biased manner from January 2, 2009 until October 29, 2010." CP at 549. Washam contends that he had a "legally cognizable justification for all he did regarding discretionary personnel decisions," without informing us of the basis of this claim. Opening Br. at 33. Without that information, his argument is unavailing.

---

[11] "**Duty to Participate.** All employees, including the complainant, co-workers, potential witnesses, and others must participate in and cooperate fully in the investigation of complaints. Failure to do so may result in disciplinary action." PCC 3.16.080(A).

[12] "Every officer or other person mentioned in RCW 42.20.070, who shall wilfully disobey any provision of law regulating his official conduct in cases other than those specified in said section, shall be guilty of a gross misdemeanor." RCW 42.20.080. RCW 42.20.070 includes "[e]very public officer, and every other person receiving money on behalf or for or on account of the people of the state or . . . for or on account of any county." Washam does not deny this includes him.

## CONCLUSION

¶30 We affirm the trial court in all respects.

Madsen, C.J., and C. Johnson, Alexander, Owens, Fairhurst, J.M. Johnson, Stephens, and Wiggins, JJ., concur.